UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN WILSON and CHARLES STILL, | Civil Action No.: 16 Civ. 00104 (PAE) |
|               Plaintiffs, | ECF Case |
|     - against - | |
| EDWARD "EDDIE" PERRELL d/b/a PERRELL MUSIC, DYNATONE PUBLISHING COMPANY, WARNER CHAPPELL MUSIC, INC., UNIVERSAL MUSIC GROUP, INC., BROADCAST MUSIC INC. (BMI), and ANHEUSER-BUSCH COMPANIES, INC. | |
|           Defendants. | |

**MEMORANDUM OF LAW OF UNIVERSAL MUSIC GROUP, INC.,
WARNER/CHAPPELL MUSIC, INC. AND DYNATONE
<u>PUBLISHING COMPANY IN SUPPORT OF MOTION TO DISMISS</u>**

MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY 10036
(212) 790-4500

*Attorneys for Defendants UMG Recordings, Inc. (sued incorrectly as
Universal Music Group, Inc.), Unichappell Music, Inc. (sued incorrectly
as Warner/Chappell Music, Inc.) and Dynatone Publishing Company*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................... 1

FACTUAL BACKGROUND .................................................................. 3

LEGAL STANDARD ........................................................................... 8

ARGUMENT ..................................................................................... 10

I.     THE COPYRIGHT ACT'S THREE-YEAR STATUTE OF LIMITATIONS
      BARS PLAINTIFFS' COPYRIGHT OWNERSHIP CLAIMS ..................................... 10

       A.    Plaintiffs' Copyright Claim Against UMG Fails Because It Accrued In
           1973 ......................................................................................... 10

       B.    Plaintiffs' Copyright Claim Against Unichappell And Dynatone Also Fails
           Because It Accrued No Later Than 1974 ................................................. 14

II.    PLAINTIFFS' ACCOUNTING CLAIMS AGAINST DEFENDANTS AND
      PERRELL'S ACCOUNTING CROSS-CLAIM AGAINST UMG MUST BE
      DISMISSED BECAUSE PLAINTIFFS AND PERRELL DO NOT HAVE A
      FIDUCIARY RELATIONSHIP WITH ANY OF THE DEFENDANTS ...................... 16

III.   PLAINTIFFS' VOICE MISAPPROPRIATION CLAIM FAILS BECAUSE
      UMG'S RIGHTS IN THE RECORDING FORECLOSE IT AND BECAUSE IT
      IS TIME-BARRED AND PREEMPTED BY THE COPYRIGHT ACT ...................... 17

CONCLUSION ................................................................................... 19

# CASES

*Aalmuhammed v. Lee*,
 202 F.3d 1227 (9th Cir. 2000) ........................................................................11, 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).........................................................................................8, 9

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.*,
 650 F.3d 876 (2d Cir. 2011)..................................................................................18

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).........................................................................................8, 9

*Bezuszka v. LA Models, Inc.*,
 No. 04 Civ. 7703 (NRB), 2006 WL 770526 (S.D.N.Y. Mar. 24, 2006)................................16

*Caldwell v. ABKCO Music & Records*,
 703 N.Y.S.2d 97 (1st Dep't 2000), *overruled on other grounds, Greenfield v.*
 *Philles Records, Inc.,* 98 N.Y.2d 562 (2002)....................................................16, 17

*Carell v. Shubert Org., Inc.*,
 104 F. Supp. 2d 236 (S.D.N.Y. 2000).............................................................13, 15

*Chambers v. Time Warner, Inc.*,
 282 F.3d 147 (2d Cir. 2002)....................................................................................9

*Cooper v. NCS Pearson, Inc.*,
 733 F.3d 1013 (10th Cir. 2013) ................................................................13, 15

*Cooper v. Sony Records Int'l*,
 00 Civ. 233 (RMB), 2001 WL 1223492 (S.D.N.Y. Oct. 15, 2001)......................................16

*Costanza v. Seinfeld*,
 181 Misc. 2d 562 (1999), *aff'd as amended*, 279 A.D.2d 255 (2001)....................................18

*Cusano v. Horipro Entm't Group*,
 301 F. Supp. 2d 272 (S.D.N.Y. 2004), *aff'd*, 126 Fed. Appx. 521 (2d Cir.
 2005) .................................................................................................................2

*Howell v. New York Post Co.*,
 81 N.Y.2d 115 (1993) .......................................................................................18

*Jules Jordan Video, Inc. v. 144942 Can. Inc.*,
 617 F.3d 1146 (9th Cir. 2010) ......................................................................17, 18

*Kwan v. Schlein*,
 634 F.3d 224 (2d Cir. 2011)........................................................................10, 11, 14

*Lane v. Mercury Record Corp.*,
 252 N.Y.S.2d 1011 (1st Dep't 1964), *aff'd*, 223 N.E.2d 35 (N.Y. 1966)..............................17

*Laws v. Sony Music Entm't*,
 448 F.3d 1134 (9th Cir. 2006) ..............................................................................19

*Margo v. Weiss*,
 96 Civ. 3842 (MBM), 1998 WL 2558 (S.D.N.Y. Jan. 5, 1998) ................................10, 12, 14

*Mellencamp v. Riva Music Ltd.*,
    698 F. Supp. 1154 (S.D.N.Y. 1988).............................................................17

*Merchant v. Levy*,
    92 F.3d 51 (2d Cir. 1996) ........................................................................10

*Miller v. Columbia Records*,
    415 N.Y.S.2d 869, *appeal dismissed*, 396 N.E.2d 474 (N.Y. 1979) ...................17

*Norbay Music, Inc. v. King Records, Inc.*,
    290 F.2d 617 (2d Cir. 1961)......................................................................5

*Ortiz v. Guitian Bros. Music Inc.*,
    07 Civ. 3897 (RS), 2008 WL 4449314 (S.D.N.Y. Sept. 29, 2008) ........12, 13, 14, 15

*Pascuzzi v. Montcalm Pub. Corp.*,
    410 N.Y.S.2d 325 (2d Dep't 1978) ............................................................18

*Richardson v. Goord*,
    347 F.3d 431 (2d Cir. 2003).....................................................................12

*Rico Records Distribs., Inc. v. Ithier*,
    04 Civ. 9782 (JSR), 2005 WL 2174006 (S.D.N.Y. Sept. 8, 2005)....................11, 14

*Rios v. Cartagena*,
    No. 14 Civ. 7583 (GBD), 2015 WL 4470433 (S.D.N.Y. July 9, 2015) ..................16

*Rodgers v. Roulette Records, Inc.*,
    677 F. Supp. 731 (S.D.N.Y. 1988)..............................................................17

*Rosenblatt v. Christie, Manson & Woods, Ltd.*,
    No. 04-Civ.-4205 (PKC), 2005 WL 2649027 (S.D.N.Y. Oct. 14, 2005), *aff'd*
    195 Fed. Appx. 11 (2d Cir. 2006)...............................................................17

*Rostropovich v. Koch Int'l Corp.*,
    No. 94 CIV 2674 (JFK), 1995 WL 104123 (S.D.N.Y. Mar. 7, 1995)....................18

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)........................................................................9

*Santa-Rosa v. Combo Records*,
    471 F.3d 224 (1st Cir. 2006).................................................................13, 15

*Silvester v. Time Warner, Inc.*,
    763 N.Y.S.2d 912 (N.Y. Sup. Ct. 2003) .......................................................17

*Simmons v. Stanberry*,
    810 F.3d 114 (2d Cir. 2016)..................................................................11, 14

*Sony Music Entm't, Inc. v. Robinson*,
    01 Civ. 6415 (LMM), 2002 WL 272406 (S.D.N.Y. Feb. 26, 2002).....................16

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
    547 F.3d 406 (2d Cir. 2008)......................................................................9

*Stone v. Williams*,
    970 F.2d 1043 (2d Cir. 1992).....................................................................10

*Swan v. EMI Music Publ'g Inc.*,
    99 Civ. 9693 (SHS), 2000 WL 1528261 (S.D.N.Y. Oct. 16, 2000) ........................17

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)...........................................................9

*Willsea v. Theis*,
    98 Civ. 6773 (BSJ), 1999 WL 595629 (S.D.N.Y. Aug. 6, 1999)...................12, 14

*Zuill v. Shanahan*,
    80 F.3d 1366 (9th Cir. 1996) .................................................................10

## STATUTES

17 U.S.C. §§ 102 and 103 ................................................................................18

17 U.S.C. § 106 .......................................................................................17, 18

17 U.S.C. § 301 ............................................................................................18

17 U.S.C. § 304(a)(4)(B) ..................................................................................7

17 U.S.C. § 402(a)-(b) ....................................................................................4

Copyright Act of 1909, § 1(e)...........................................................................5

New York Civil Rights Law § 50 .......................................................................18

New York Civil Rights Law § 51 .......................................................................18

## RULES

Fed. R. Civ. P. (12)(b)(6)....................................................................... passim

Fed. R. Evid. 201 .............................................................................................9

Defendants UMG Recordings, Inc. (sued incorrectly as Universal Music Group, Inc.) ("UMG"), Unichappell Music, Inc. ("Unichappell") (sued incorrectly as Warner/Chappell Music, Inc.) and Dynatone Publishing Company ("Dynatone") (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") (i) all claims of plaintiffs John Wilson and Charles Still ("Plaintiffs"); and (ii) the cross-claim of defendant Edward Perrell ("Perrell").

## PRELIMINARY STATEMENT

For more than 40 years, Defendants and their predecessors have openly claimed ownership of the copyrights in and exploited the 1973 sound recording and musical composition *Sho' Nuff* (a/k/a *Sho' Nuff (You Really Love Him)*) (respectively, the "Recording" and "Composition") by the musical group Sly Slick & Wicked. Before 2013, none of the group's members – Plaintiffs and non-party Terrance Stubbs ("Stubbs") – ever challenged Defendants' or their predecessors' rights in the Recording and Composition. However, after Defendants licensed the works for use in Justin Timberlake's song *Suit & Tie* and J. Cole's song *Chaining Day* in 2013, Plaintiffs came out of the woodwork to question Defendants' ownership rights, asserting for the first time that UMG did not own the exclusive rights in the Recording, and that Unichappell, Dynatone, Perrell and their predecessors never acquired ***any*** rights in the Composition. In January 2016, nearly 43 years after Plaintiffs first learned of Defendants' or their predecessors' copyright ownership claims, Plaintiffs filed suit seeking (i) judicial declarations invalidating Defendants' copyright registrations for the Recording and Composition, and recognizing Plaintiffs as the Recording's joint owners and the Composition's ***sole*** owners; (ii) accountings for Defendants' exploitations of the works; and (iii) damages for the supposed misappropriation of Plaintiffs' voices. Each of these claims fails as a matter of law.

*First*, Plaintiffs' own allegations conclusively demonstrate that their copyright ownership declaratory relief claims (Counts I and III) are time-barred. Their Complaint makes clear that Plaintiffs' copyright ownership claims accrued ***no later than 1974*** because they knew or should have known by that time that Defendants or their predecessors claimed exclusive ownership of the copyright in the Recording and at least joint ownership of the copyright in the Composition based on the following, among other grounds:

- the 1973 commercial release of the Recording expressly identified Polydor Incorporated ("Polydor"), UMG's predecessor-in-interest, as the distributor of and the owner of the copyright in the Recording, and listed Dynatone and Belinda Music ("Belinda") (Unichappell's predecessor-in-interest) and Perrell Music (Perrell's publishing entity) as the publishers of the Composition;

- Polydor registered the copyright in the Recording in its own name as a work made for hire with the U.S. Copyright Office in 1973;

- Perrell registered the Composition with defendant Broadcast Music Incorporated ("BMI") in 1973, claiming that Perrell Music, Dynatone and Belinda were the publishers of the Composition, and entitled to the entire publisher share of public performance income from the work;[1]

- Dynatone obtained a copyright registration in the Composition in its own name from, and filed a notice of use of the Composition as the owner of the copyright in the work with, the U.S. Copyright Office in 1974; and

- Defendants and their predecessors allegedly failed to render any accountings or make any payments to Plaintiffs for exploitations of the Recording and Composition following the 1973 commercial release of the works.

Thus, the Copyright Act's three-year statute of limitations required Plaintiffs to file suit no later

---

[1] *See Cusano v. Horipro Entm't Group*, 301 F. Supp. 2d 272, 273 n.1 (S.D.N.Y. 2004) ("Musical compositions generate several different streams of income. Music that is distributed on sound recordings such as compact discs generates mechanical royalties. Music that is publicly performed, such as when a song is played on a radio, used in a movie or commercial, or sampled in another song, produces performance royalties. Each of these two royalty streams is then divided between the songwriter (the writer's share) and the composition's publisher (the publisher's share). The publisher is typically the party responsible for promoting the composition, registering copyrights for the composition, and exploiting the composition, such as by licensing the composition to third parties so that the composition may be publicly performed." (citations omitted)), *aff'd*, 126 Fed. Appx. 521 (2d Cir. 2005).

than 1977. Their failure to do so forecloses their copyright claims here in their entirety.

*Second*, Plaintiffs' accounting claims (Counts II and IV) are fatally defective because Plaintiffs do not and cannot allege – as they must – a fiduciary relationship with any of the Defendants. For this reason alone, the Court should not allow these claims to proceed.

*Third*, to the extent Plaintiffs' direct their voice misappropriation claim (Count VI [sic]) against UMG, the claim is improper. As the owner of the copyright in the Recording, UMG has the unfettered right to license its exploitation – and the portions of it containing Plaintiffs' voices – for advertising purposes. In addition, the claim is untimely and otherwise preempted by the Copyright Act. Accordingly, it, too, should be rejected.

Finally, Perrell's cross-claim seeks an accounting from UMG for its exploitations of the Recording. But, like Plaintiffs' accounting claims, Perrell's cross-claim is fatally defective because he has not alleged – and cannot establish – a fiduciary relationship with UMG. His cross-claim, therefore, cannot move forward.

## FACTUAL BACKGROUND

Plaintiffs and Stubbs were members of the musical group Sly, Slick & Wicked, which recorded for various record labels throughout the 1970s. (Complaint ("Cplt.") ¶¶ 7, 13-14, 26-29) Plaintiff John Wilson allegedly wrote the Composition prior to April 1973. (*Id.* ¶¶ 32-36) On or about May 12, 1973, Plaintiffs and Stubbs registered their claim to the copyright in the Composition with the U.S. Copyright Office. (*Id.* ¶ 46 and Exh. A)

At or around the same time, Plaintiffs and Stubbs prepared the Recording at Perrell's suggestion. (*Id.* ¶¶ 35-36) Perrell and the three band members thereafter met with and played the Recording for representatives of People Records, a record label owned by James Brown ("Brown"). (*Id.* ¶¶ 37, 40) Perrell and Brown modified the Recording by adding strings and

bells to it.  (*Id.* ¶ 41)

On or about June 28, 1973, People Records commercially released a 45 RPM single of the Recording with the sound recording Ready For You on the B side (the "1973 Release") (*id.* ¶¶ 42, 49), a true and correct copy of an image of which is annexed at Exhibit 1 to the accompanying Declaration of Robert A. Jacobs executed on August 1, 2016 ("Jacobs Declaration" or "Jacobs Decl.").  Thereafter, Plaintiffs and Stubbs appeared "on the popular Soul Train TV show" to perform *Sho Nuff.*  (Cplt. ¶ 42; *see also* https://www.youtube.com/watch?v=XOhi5yWa_8M (video of Soul Train performance) (last accessed July 29, 2016))

The credits on the 1973 Release identify Perrell and Brown as the producers of the Recording.  (Cplt. ¶ 42; Jacobs Decl., Exh. 1)  Though not mentioned in the Complaint, the credits on the 1973 Release (which Plaintiffs expressly reference) also identify Polydor – People Records' successor-in-interest and UMG's predecessor-in-interest (Cplt. ¶¶ 23, 61) – as the distributor of the 1973 Release and copyright owner of the Recording, as denoted by the symbol "℗" next to the company's name and the date of publication;[2] Dynatone, Belinda and Perrell Music as the Composition's publishers; and BMI as the performing rights organization that would collect public performance royalties for the Composition.  (Jacobs Decl., Exh. 1)  As discussed further below, the credits on the 1973 Release, by themselves, gave Plaintiffs ample notice that Defendants and their predecessors rejected the notion that Plaintiffs and Stubbs owned any part of the copyright in the Recording or were the sole owners of the copyright in the Composition.

---

[2] *See* 17 U.S.C. § 402(a)-(b) (copyright notice on sound recordings is comprised of "(1) the symbol (the letter P in a circle); and (2) the year of first publication of the sound recording; and (3) the name of the owner of copyright in the sound recording").

Several other events at the time of and after the 1973 Release demonstrate that Defendants and their predecessors repeatedly rejected Plaintiffs' and Stubbs' ownership rights in the Recording and Composition. *First*, on or about June 26, 1973, Polydor obtained a registration for the copyright in the Recording – N 8141 – from the U.S. Copyright Office claiming **sole ownership** of the copyright as a work made for hire (the "Polydor Registration"). (Cplt. ¶¶ 62-63 and Exh. D) *Second*, on or about July 9, 1973, Perrell registered the Composition with BMI by filing a Publisher Clearance Form – a true and correct copy of which is annexed as Exhibit 2 to the Jacobs Declaration – identifying Dynatone, Belinda and Perrell Music as the Composition's publishers, and claiming the **entire publisher share** of public performance income from the work on their behalf (the "BMI Registration"). (Cplt. ¶ 51; Jacobs Decl., Exh. 2) *Third*, on or about June 26, 1974, Chappell & Co., Inc. ("Chappell"), Unichappell's predecessor (Cplt. ¶ 20), obtained a registration for the copyright in the Composition – Eu 495309 – from the U.S. Copyright Office claiming ownership of the copyright in Dynatone's name **alone** (the "Dynatone Registration"). (*Id.* ¶ 50 and Exh. B) *Fourth*, in or around 1974, Chappell also filed in the U.S. Copyright Office on Dynatone's behalf as the owner of the copyright in the Composition a Notice of Use for the Composition ("Dynatone Notice Of Use"), a true and correct copy of which is annexed as Exhibit 3 to the Jacobs Declaration.[3] *Fifth*, following the 1973 Release, and despite Plaintiffs' awareness of its popularity, including as a

---

[3] At the time, the Copyright Act required owners of the copyright in a musical composition that they recorded or allowed others to record to file a Notice Of Use in order to preserve their rights to bring copyright infringement actions against third parties. *See* Copyright Act of 1909, Section 1(e) ("It shall be the duty of the copyright owner, if he uses the musical composition himself for the manufacture of parts of instruments serving to reproduce mechanically the musical work, or licenses others to do so, to file notice thereof, accompanied by a recording fee, in the copyright office, and any failure to file such notice shall be a complete defense to any suit, action, or proceeding for any infringement."), *available at* http://www.copyright.gov/history/1909act-1973.pdf; *see also Norbay Music, Inc. v. King Records, Inc.*, 290 F.2d 617, 618-20 (2d Cir. 1961) (discussing statute's application).

result of their performance of *Sho Nuff* "on the popular Soul Train TV show" (Cplt. ¶ 42), Plaintiffs allege that they ***never received a single accounting or payment*** for exploitations of the Recording or Composition from any of the Defendants, their predecessors or Perrell, with the sole exception of a payment from Unichappell after this dispute arose 40 years later. (*Id.* ¶¶ 53-54, 57, 70-71, 73-75). *Sixth*, in 2001, UMG obtained a registration – RE0000860128 – for the renewal term copyright in the Recording from the U.S. Copyright Office (the "UMG Renewal Registration"), a true and correct copy of which is annexed as Exhibit 4 to the Jacobs Declaration. These additional events, individually and collectively, overwhelmingly demonstrate that Plaintiffs and Stubbs knew or should have known beginning ***more than four decades ago*** – and certainly more than three years before they filed this lawsuit – that Defendants and their predecessors rejected any claim that Plaintiffs (and Stubbs) were co-owners of the copyright in the Recording or sole owners of the copyright in the Composition.

Plaintiffs try to avoid this case-ending background by claiming that they never entered into any written agreements with Defendants.[4] Plaintiffs, thus, allege that Polydor had no basis to register the Recording as a work made for hire (Cplt. ¶¶ 45, 69);[5] that the Dynatone Registration is invalid (*id.* ¶ 84); that Plaintiffs and Stubbs had no written agreement with Perrell at the time they made the Recording, and, in any event, "did not agree to forego the receipt of royalty payments, a share of profits, full earnings or an accounting from [him]" (*id.* ¶¶ 56, 65); that Plaintiffs never authorized UMG or its predecessors to license Plaintiffs' recorded performances (*id.* ¶ 78); and that they never transferred any interest in the renewal term copyright for the Recording and Composition to Defendants or their predecessors. (*Id.* ¶ 52) As further evidence of their and Stubbs' purported sole ownership of the copyright in the

---

[4] Defendants categorically reject this claim.

[5] Plaintiffs make no mention of the UMG Renewal Registration in the Complaint.

Composition, Plaintiffs point to the renewal term copyright registration they obtained for the work from the U.S. Copyright Office as of November 15, 2015 – more than 14 years after the commencement of the renewal term and just six weeks before they filed this lawsuit. (*Id.* ¶¶ 58-59 and Exh. C)

However, none of these allegations is of any help to Plaintiffs. As the Complaint itself and the other facts discussed above confirm, Defendants and their predecessors' actions vis-à-vis Plaintiffs remained the same over the last 43 years. Time and again during these four decades, Defendants and their predecessors repudiated Plaintiffs' partial ownership claim in the Recording and sole ownership claim in the Composition. As a result, Plaintiffs' purported copyright ownership claims accrued – and the three-year statute of limitations governing the claims expired – *decades ago*. Plaintiffs' belated efforts to register a renewal term copyright for the Composition in November 2015, and file suit in January 2016 disavowing any contractual relationship with Defendants or their predecessors do not alter this conclusion. Indeed, in contrast to the UMG Renewal Registration, which UMG obtained within one year *before* the expiration of the original term of copyright secured by the Polydor Registration, and, therefore, "constitute[s] prima facie evidence as to the validity of [UMG's] copyright during its renewed and extended term and of the facts stated [therein]", Plaintiffs' renewal registration – obtained *14 years after* the expiration of the Composition's original term of copyright (and just weeks before the filing of this lawsuit) – does not enjoy any such presumption. 17 U.S.C. § 304(a)(4)(B). In short, because the time for Plaintiffs to pursue their exclusive ownership claim had passed long before they obtained their purported renewal registration, the registration was invalid, and, in any event, could not and did not revive their claim.

Finally, Plaintiffs base their purported voice misappropriation claim on the alleged use of

their voices, as embodied in the Justin Timberlake song *Suit & Tie*, in connection with a Bud Light campaign. (Cplt. ¶¶ 77-81, 101) Although the Complaint is silent as to when the campaign began, a press release on the official website of Defendant Anheuser-Busch Companies, LLC, a true and correct copy of which is annexed as Exhibit 5 to the Jacobs Declaration, and other publicly-available information confirm that it began in February 2013. *See* http://anheuser-busch.com/index.php/bud-light-platinum-engages-justin-timberlake-as-creative-director/ (last accessed July 29, 2016);

http://www.billboard.com/articles/news/1538540/justin-timberlakes-bud-light-ad-featuring-suit-tie-to-debut-at-grammys (last accessed July 29, 2016);

*https://m.youtube.com/watch?v=hLRX6VyF_Cw* (video of Bud Light advertisement featuring *Suit & Tie* posted February 11, 2013) (last accessed July 29, 2016). As discussed below, Plaintiffs do not have the right to challenge any alleged use of their voices in the campaign, but, even if they did (and they do not), their claim is time-barred and otherwise preempted by the Copyright Act.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a pleading to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, the complaint must establish that the requested relief is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The plausibility standard is only satisfied where "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a court ordinarily must accept a plaintiff's allegations as true, it need not accept as

true allegations that merely "offer[] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, the complaint must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Twombly*, 550 U.S. at 556. If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570. If a complaint indicates that the claims at issue are untimely, the court may dismiss them pursuant to Rule 12(b)(6). *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008) (because the potential lapse of the applicable limitations period for the claim at issue was clear on the face of the complaint, "[a]ppellee's motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) was a proper means to plead that the claim should be dismissed as untimely" (citations omitted)).

In deciding a motion to dismiss, a court may consider any document referenced in the complaint – even if not specifically attached to the complaint or incorporated by reference – so long as the document is integral to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A document is integral to the complaint if the complaint "relies heavily upon its terms and effect." *Id.* (internal citations and quotations omitted). In this context, "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit" are considered part of the complaint. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Further, "[u]nder Federal Rule of Evidence 201, a court may take judicial notice, at 'any stage of the proceeding,' of any fact 'that is not subject to reasonable dispute because' it 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (quoting Fed. R. Evid. 201(b)(2), (d)). "When considering a Rule 12(b)(6) . . .

motion, the Court may take judicial notice of certain matters of public record without converting

the motion into one for summary judgment." *Id.* (citations omitted). "Pursuant to Rule 201,

courts have considered newspaper articles, . . . documents filed with governmental entities and

available on their official websites, and information publicly announced on certain non-

governmental websites, such as a party's official website." *Id.* (citations omitted).

## ARGUMENT

## I. THE COPYRIGHT ACT'S THREE-YEAR STATUTE OF LIMITATIONS BARS PLAINTIFFS' COPYRIGHT OWNERSHIP CLAIMS

A party seeking to establish and enforce its ownership of a copyright must do so within

three years after its claim accrues or else its claim will be barred. *Merchant v. Levy*, 92 F.3d 51,

56 (2d Cir. 1996). "Failure to sue within the three-year period requires dismissal of a claim of

copyright ownership and 'any rights or remedies' that would flow from such a claim." *Margo v.

Weiss*, 96 Civ. 3842 (MBM), 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998) (quoting *Merchant*,

92 F.3d at 56), *aff'd,* 213 F.3d 55 (2d Cir. 2000). Unlike copyright infringement claims, the

statute of limitations for copyright ownership claims does not apply on a "rolling basis" and, as

such, bars all such claims three years after they accrue. *Kwan v. Schlein*, 634 F.3d 224, 228 (2d

Cir. 2011); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996). "An ownership claim accrues

***only once***, when 'a reasonably diligent plaintiff would have been put on inquiry as to the

existence of a right.'" *Kwan*, 634 F.3d at 228 (quoting *Stone v. Williams*, 970 F.2d 1043, 1048

(2d Cir. 1992)) (emphasis added). As we now demonstrate, Plaintiffs' copyright ownership

claims accrued in 1973 or 1974 and, therefore, have been time-barred since at least 1977.

### A. Plaintiffs' Copyright Claim Against UMG Fails Because It Accrued In 1973

Plaintiffs' own allegations conclusively establish that Plaintiffs have known or should

have known the basis of their copyright ownership claim against UMG and its predecessor,

10

Polydor, since 1973.  The claim fails as a matter of law.

*First*, the 1973 Release prominently lists Polydor as the distributor and sole copyright owner of the Recording.  (*See* Jacobs Decl. Exh. 1)  This information clearly was at odds with and constituted a repudiation of Plaintiffs' claim that they co-owned the copyright in the Recording.  Plaintiffs, thus, knew – or, with the exercise of reasonable diligence, should have known – that Polydor asserted sole copyright ownership over the Recording, *see Kwan*, 634 F.3d at 228, and, as such, were obligated to file suit no later than 1976 in order to establish their ownership rights or be barred from doing so.  *Cf. Simmons v. Stanberry*, 810 F.3d 114, 115-16 (2d Cir. 2016) (plaintiff was on notice that the defendant had repudiated an alleged sale of exclusive rights to a musical "beat" to the plaintiff when defendant publicly released a recording employing the "beat," and was barred from filing suit more than three years after the recording's release); *Kwan*, 634 F.3d at 229 (plaintiff's copyright ownership claim was untimely because she did not file suit within three years of the initial publication of the book at issue without her listed as an author); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230-31 (9th Cir. 2000) (credits appearing with film's release that identified plaintiff as an "Islamic technical consultant," not an author, triggered his obligation to commence copyright ownership action within three years or lose the right to do so because they "plainly and expressly repudiated authorship"); *Rico Records Distribs., Inc. v. Ithier*, 04 Civ. 9782 (JSR), 2005 WL 2174006, at *2 (S.D.N.Y. Sept. 8, 2005) (copyright notices on sound recordings at issue "create sufficient notice to begin the running of the statute of limitations").

*Second*, Plaintiffs also knew or should have known through the exercise of reasonable diligence that Polydor asserted sole copyright ownership rights in the Recording by June 28, 1973, when the company obtained the Polydor Registration.  As discussed on page 5 above and

reflected in Exhibit D to the Complaint, the Polydor Registration shows that Polydor claimed sole ownership of the copyright in the Recording as a work made for hire.[6] *See Ortiz v. Guitian Bros. Music Inc.*, 07 Civ. 3897 (RS), 2008 WL 4449314, at *4 (S.D.N.Y. Sept. 29, 2008) (because plaintiff authored the score at issue knowing that defendants would exploit it as part of the film they marketed and distributed, "he should reasonably have anticipated that [they] would seek to copyright the [film] prior to or in conjunction with marketing and distributing it and, in the exercise of reasonable diligence, discovered the[ir] registration"); *Willsea v. Theis*, 98 Civ. 6773 (BSJ), 1999 WL 595629, at *4-5 (S.D.N.Y. Aug. 6, 1999) (purported co-author's cause of action to establish his copyright ownership accrued upon the issuance of the copyright registration for the work at issue because "[c]o-authors know their status as authors from the time the copyrighted work is created [and] once an author registers his copyright, any co-author exercising reasonable diligence should be aware that another person has claimed authorship and thus know of his alleged injury" (citation omitted)), *abrogated on other grounds by Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003); *Margo*, 1998 WL 2558, at *5 (songwriters' claim seeking declaration that they co-authored and co-own the copyright in a musical composition accrued at time that the composition was written and the defendants obtained a copyright registration listing the defendants as authors, and their failure to sue within three years after that point required dismissal of their claim).

*Third*, Plaintiffs' allegations that they received no accountings or royalties in the 1970s from the exploitation of the Recording further demonstrate that they long ago knew or should have known of their purported copyright ownership claim. As various courts have recognized,

---

[6] The same analysis applies to the UMG Renewal Registration (Jacobs Decl., Exh.4), which reflects UMG's claim to sole ownership of the copyright in the Recording as a work made for hire. Nevertheless, the statute of limitations on Plaintiffs' copyright claim had long since expired by the time that UMG obtained the registration in 2001.

the open and notorious exploitation of a work without compensation to a party claiming an ownership interest in the work clearly and unequivocally puts the party on notice that the claim has been rejected. *See, e.g., Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013, 1017 (10th Cir. 2013) ("Awareness that one is not receiving royalties . . . puts one on notice of the basis for a copyright co-ownership claim." (citations omitted)); *Santa-Rosa v. Combo Records*, 471 F.3d 224, 227–28 (1st Cir. 2006) (rejecting as untimely plaintiff's claim for declaration of copyright ownership more than three years after he should have expected payments, and emphasizing that the court "cannot think of a more plain and express repudiation of co-ownership than the fact that [defendant] openly, and quite notoriously, sold [his] records without providing payment to him"); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 249 (S.D.N.Y. 2000) ("non-payment of royalties should have put [plaintiff] on notice" about her copyright ownership claims); *Ortiz*, 2008 WL 4449314, at *4 ("Defendants' open distribution and exploitation of the Motion Picture and Score without paying any royalties to [plaintiff] should have put [him] on notice that Defendants rejected his claim to copyright in the Score" (citation omitted)). This is especially true here in light of the significant public exposure that *Sho Nuff* received as a result of, among other things, Plaintiffs' and Stubbs' performance of the work "on the popular Soul Train TV show." (Cplt. ¶ 43)

As the above discussion makes clear, Polydor openly and repeatedly asserted sole ownership rights in the Recording copyright starting in 1973. Plaintiffs, therefore, knew or should have known by that time that Polydor had repudiated their purported joint ownership rights, triggering the three-year statute of limitations on their copyright ownership claim. Accordingly, the claim that Plaintiffs now attempt to assert against UMG, Polydor's successor, has been time-barred for approximately 40 years, and must be dismissed with prejudice.

**B.** **Plaintiffs' Copyright Claim Against Unichappell And Dynatone Also Fails Because It Accrued No Later Than 1974**

Plaintiffs' copyright claim against Unichappell and Dynatone fares no better because Plaintiffs' allegations and various public record documents conclusively establish that the claim accrued no later than 1974. Accordingly, the claim must be dismissed.

*First*, as discussed on page 4 above, the credits on the 1973 Release (discussed in the Complaint) prominently list Dynatone, Belinda and Perrell Music as the Composition's publishers. This information clearly was at odds with and constituted a repudiation of Plaintiffs' purported sole ownership of the copyright in the Composition. Thus, the 1973 Release alone shows that Plaintiffs knew or with reasonable diligence should have known that Dynatone, Belinda and Perrell Music claimed an ownership interest in at least the publisher share of the Composition copyright. *See Kwan*, 634 F.3d at 228. Plaintiffs, therefore, were obligated to file suit to establish their exclusive rights in the work no later than 1976 or be forever barred from doing so. *Cf. Simmons*, 810 F.3d at 115-16; *Kwan*, 634 F.3d at 229; *Aalmuhammed*, 202 F.3d at 1230-31; *Rico Records Distribs., Inc.*, 2005 WL 2174006, at *2.

*Second*, Plaintiffs also knew or with reasonable diligence should have known of Dynatone's adverse copyright claim in 1974 based on the company's dual filings in the U.S. Copyright Office. As noted on page 5 above and as reflected in Exhibit B to the Complaint and Exhibit 3 to the Jacobs Declaration, both the Dynatone Registration and Dynatone First Use Notice show that Dynatone claimed ownership of the copyright in the Composition. These filings, thus, triggered the accrual of Plaintiffs' copyright claim, requiring them to file suit no later than 1977. *See Ortiz*, 2008 WL 4449314, at *4; *Willsea*, 1999 WL 595629, at *4-5; *Margo*, 1998 WL 2558, at *5.

*Third*, the BMI Registration filed by Perrell in July 1973 unambiguously indicates that

Dynatone, Perrell Music and Belinda Music alone are entitled to the publisher share of the Composition, and that Plaintiffs' rights are limited to the writer share of the Composition. (*See* Cplt. ¶ 51; Jacobs Decl. Exh. 2.) Because the 1973 Release makes clear that Dynatone, Belinda and Perrell Music designated BMI to collect public performance royalties for the Composition (*see* Jacobs Exh. 1), Plaintiffs should have anticipated that the Composition would be registered with BMI, and, in the exercise of reasonable diligence, discovered the BMI Registration. *See Ortiz*, 2008 WL 4449314, at *4. The BMI Registration, thus, also triggered the accrual of Plaintiffs' copyright ownership claim in 1973, making it incumbent upon them to file suit no later than 1976.

*Fourth*, as with Polydor, Plaintiffs' allegations that they received no accountings or payments in the 1970s from exploitations of the Composition further demonstrate that Plaintiffs knew or should have known of their purported copyright ownership claims four decades ago. As discussed on pages 12 and 13 above, the open and notorious exploitation of a work without compensation to a party claiming an ownership interest in the work clearly and unequivocally puts the party on notice that the claim has been rejected. *See, e.g., Cooper*, 733 F.3d at 1017; *Santa-Rosa*, 471 F.3d at 227; *Carell*, 104 F. Supp. 2d at 249; *Ortiz*, 2008 WL 4449314, at *4. Thus, the alleged failure of Dynatone, Belinda and Perrell Music to account to and pay Plaintiffs for the Composition beginning in the 1970s triggered the accrual of Plaintiffs' copyright ownership claim at that time. Accordingly, like the copyright claim against UMG, the copyright claim that Plaintiffs now attempt to assert against Unichappell and Dynatone, both successors of Belinda's, has been time-barred for decades, and must be dismissed with prejudice.

**II.  PLAINTIFFS' ACCOUNTING CLAIMS AGAINST DEFENDANTS AND PERRELL'S ACCOUNTING CROSS-CLAIM AGAINST UMG MUST BE DISMISSED BECAUSE PLAINTIFFS AND PERRELL DO NOT HAVE A FIDUCIARY RELATIONSHIP WITH ANY OF THE DEFENDANTS**

Plaintiffs purport to allege separate accounting claims against UMG, on the one hand, and Unichappell and Dynatone (and Perrell), on the other hand, while Perrell purports to allege an accounting claim against UMG alone.  However, as we now demonstrate, these claims fail as a matter of law because Plaintiffs and Perrell have not alleged – and cannot allege – a fiduciary relationship with Defendants.

A fiduciary relationship is a mandatory element of an accounting claim in New York. *See, e.g.*, *Bezuszka v. LA Models, Inc.*, No. 04 Civ. 7703 (NRB), 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006) (under New York law, "a plaintiff seeking an accounting, which is an equitable remedy, must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant"); *Caldwell v. ABKCO Music & Records*, 703 N.Y.S.2d 97, 98 (1st Dep't 2000) ("The causes of action for accountings were . . . properly dismissed on the ground that plaintiffs' relationship to defendant is not fiduciary in nature."), *overruled on other grounds, Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 572 (2002). Plaintiffs and Perrell do not and cannot meet their burden of establishing such a relationship.

They make no mention – let alone attempt to establish – in their pleadings the existence of a fiduciary relationship with any of the Defendants.  But even if they had done so (and they did not), their efforts would have been futile because the law does not recognize a fiduciary relationship between record labels and recording artists and producers, or between music publishers and their writers.  *See, e.g.*, *Rios v. Cartagena*, No. 14 Civ. 7583 (GBD), 2015 WL 4470433, at *7 (S.D.N.Y. July 9, 2015); *Sony Music Entm't, Inc. v. Robinson*, 01 Civ. 6415 (LMM), 2002 WL 272406, at *2 (S.D.N.Y. Feb. 26, 2002); *Cooper v. Sony Records Int'l*, 00 Civ.

233 (RMB), 2001 WL 1223492, at *5 (S.D.N.Y. Oct. 15, 2001); *Swan v. EMI Music Publ'g Inc.,* 99 Civ. 9693 (SHS), 2000 WL 1528261, at *5 (S.D.N.Y. Oct. 16, 2000); *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1157 (S.D.N.Y. 1988); *Rodgers v. Roulette Records, Inc.,* 677 F. Supp. 731, 739 (S.D.N.Y. 1988); *Caldwell,* 703 N.Y.S.2d at 98; *Miller v. Columbia Records,* 415 N.Y.S.2d 869, 871 (1st Dep't), *appeal dismissed*, 396 N.E.2d 474 (N.Y. 1979) (table); *Lane v. Mercury Record Corp.,* 252 N.Y.S.2d 1011, 1012 (1st Dep't 1964), *aff'd*, 223 N.E.2d 35 (N.Y. 1966); *Silvester v. Time Warner, Inc.,* 763 N.Y.S.2d 912, 918 (N.Y. Sup. Ct. 2003); *see also Rosenblatt v. Christie, Manson & Woods, Ltd.*, No. 04-Civ.-4205 (PKC), 2005 WL 2649027, at *10 (S.D.N.Y. Oct. 14, 2005) ("Collecting and remitting money due to a contractual counterparty . . . does not make one a fiduciary."), *aff'd* 195 Fed. Appx. 11 (2d Cir. 2006). Accordingly, Plaintiffs' accounting claims against Defendants and Perrell's accounting cross-claim against UMG must be dismissed with prejudice.

III.     **PLAINTIFFS' VOICE MISAPPROPRIATION CLAIM FAILS BECAUSE UMG'S RIGHTS IN THE RECORDING FORECLOSE IT AND BECAUSE IT IS TIME-BARRED AND PREEMPTED BY THE COPYRIGHT ACT**

Insofar as Plaintiffs' voice misappropriation claim targets UMG (*see* Cplt. ¶¶ 77-81, 99-102), the claim fails for three separate and independent reasons. *First*, UMG's ownership of the Recording copyright forecloses Plaintiffs' claim because it gives UMG the exclusive right, among other things, to prepare and authorize others to prepare derivative works based on the Recording, including the advertisements underlying the claim. *See Jules Jordan Video, Inc. v. 144942 Can. Inc.*, 617 F.3d 1146, 1152 (9th Cir. 2010) ("Congress enacted the Copyright Act . . . to define and protect the rights of copyright holders. The Act provides that 'the owner of copyright . . . has the exclusive rights to do and to authorize' others to display, perform, reproduce or distribute copies of the work and to prepare derivative works . . . . A copyright gives the owner the right to control the work." (quoting 17 U.S.C. § 106)). *Second*, Plaintiff's

claim, which appears to arise under New York Civil Rights Law § 51,[7] is barred by the one-year

limitations period applicable to § 51 because the claim accrued upon the launch of the

advertising campaign at issue in February 2013.  *See Rostropovich v. Koch Int'l Corp.*, No. 94

CIV 2674 (JFK), 1995 WL 104123, at *7 (S.D.N.Y. Mar. 7, 1995) (section 51 claims are

governed by a one-year statute of limitations, and "the single publication rule, which holds that

distribution of the offending publication gives rise to only one cause of action [that] runs from

the first distribution of the offending item"); *Pascuzzi v. Montcalm Pub. Corp.*, 410 N.Y.S.2d

325, 326 (2d Dep't 1978) (section 51 claims accrue "at the time the allegedly offending

publication was placed on sale to the public, and no later").  Third, the Copyright Act preempts

the claim because it "seeks to vindicate legal or equitable rights that are equivalent to" those that

the Act protects (*i.e.*, the right to prepare derivative works), and because the work at issue (*i.e.*,

the Recording) "falls within the type of works" that section 102 of the Act protects.  *See*

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.,* 650 F.3d 876, 892 (2d Cir. 2011) ("a claim is

preempted (i) if it seeks to vindicate 'legal or equitable rights that are equivalent' to one of the

bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106 – the

'general scope requirement'; and (ii) if the work in question is of the type of works protected by

the Copyright Act under 17 U.S.C. §§ 102 and 103 – the 'subject matter requirement'" (citing 17

U.S.C. § 301) (other citations omitted)); *Jules Jordan Video, Inc.*, 617 F.3d at 1153-54

(Copyright Act preempts right of publicity claim based on misappropriation of a video

---

[7] This statute is the sole vehicle through which Plaintiffs could pursue a voice misappropriation claim because New York does not recognize a common law right of privacy.  *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 123 (1993) ("While the courts of other jurisdictions have adopted some or all of these [privacy-related] torts, in this State the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law; we have no common law of privacy."); *accord Costanza v. Seinfeld*, 181 Misc. 2d 562, 564 (1999), *aff'd as amended*, 279 A.D.2d 255 (2001) (same).

performance); *Laws v. Sony Music Entm't*, 448 F.3d 1134, 1142-43 (9th Cir. 2006) (Copyright Act preempts right of publicity claim based on allegations of misappropriation of voice recording).

Plaintiffs, therefore, have no right to pursue their purported voice misappropriation claim. Accordingly, the claim must be dismissed with prejudice.

## **CONCLUSION**

For all of these reasons, Defendants respectfully request that the Court dismiss with prejudice pursuant to Rule 12(b)(6) all of Plaintiffs' claims against Defendants and Perrell's cross-claim against UMG.

Dated:   New York, New York
       August 1, 2016

                                 Respectfully submitted,

                                 MANATT, PHELPS & PHILLIPS, LLP

                       By:   /s/  Robert A. Jacobs
                           Robert A. Jacobs
                           7 Times Square
                           New York, NY 10036
                           Telephone:  (212) 790-4500
                           Facsimile: (212) 790-4545
                           E-Mail:  rjacobs@manatt.com

                           *Attorneys for Defendants UMG Recordings, Inc. (sued incorrectly as Universal Music Group, Inc.), Unichappell Music, Inc. (sued incorrectly as Warner/Chappell Music, Inc.) and Dynatone Publishing Company*