USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-10-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JOHN WILSON, CHARLES STILL, and TERRANCE
STUBBS,

                                Plaintiffs,

                  -v-

DYNATONE PUBLISHING COMPANY, UMG
RECORDINGS, INC., and UNICHAPPELL MUSIC,
INC.,

                                Defendants,

                  -v-

EDWARD "EDDIE" PERRELL d/b/a PERRELL
MUSIC,

                                Cross-Plaintiff.

------------------------------------------------------------------X

16 Civ. 104 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Plaintiffs John Wilson, Charles Still, and Terrance Stubbs seek declaratory judgments that (1) they are the owners of the renewal copyrights in the musical composition "Sho' Nuff (You Really Love Him)," and a recording of this song, which they authored and created in 1973; and (2) the copyright on this composition and recording registered by defendants in 1974 is invalid. Plaintiffs also seek accountings under New York law with respect to earnings from defendants' use of this composition and recording. In addition, Edward "Eddie" Perrell—a former defendant, now a cross-plaintiff—cross-claims against defendant UMG Recordings, Inc. for an accounting of *its* earnings from use of the recording. Plaintiffs' purpose in pursuing this

relief is to enable them to obtain royalties from these works, which, in 2013, were sampled in two popular hit songs, Justin Timberlake's "Suit & Tie" and J. Cole's "Chaining Day."

Defendants Dynatone Publishing Company ("Dynatone"), UMG Recordings, Inc. ("UMG"), and Unichappell Music, Inc. ("Unichappell") now move to dismiss all such claims. Defendants argue that plaintiffs' claims as alleged in the Amended Complaint ("AC") are barred by the three-year statute of limitations for copyright actions; and that the accounting claims fail to state a claim both because they are time-barred and because the AC does not allege a fiduciary relationship between plaintiffs and defendants.

For the following reasons, the Court grants the motion to dismiss.

## I. Background

### A. Factual Background[1]

Plaintiffs were the members of the musical group "Sly, Slick & Wicked," which wrote and performed music in the 1970s. AC ¶¶ 13–15, 26. Around early 1973, Wilson wrote the musical composition "Sho' Nuff (You Really Love Him)" ("Sho' Nuff") while traveling with Sly, Slick & Wicked and inspired by his recent break up with his wife. *Id.* ¶ 33.

---

[1] The Court's summary of the facts is drawn from the AC and its attached exhibits, which are incorporated by reference in the AC, and from Perrell's Cross-Claim, Dkt. 40 ("Cross-Claim"). For the purpose of resolving the motion to dismiss, the Court assumes all well-pleaded facts to be true and draws all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also draws from the exhibits attached to the Declaration of Robert A. Jacobs in Support of Defendants' Motion to Dismiss, Dkt. 70 ("Jacobs Decl."). These materials are cognizable on the instant motion to dismiss because they are either incorporated by reference in the AC or are "integral" to the AC. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks and citation omitted)). In deciding a motion to dismiss, a court may consider, as included in the complaint, "documents that the plaintiffs either possessed or knew about upon and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) (citation omitted).

Around this time, Perrell was a music promoter based in New York City who wanted to help Sly, Slick & Wicked obtain a new recording agreement. *Id.* ¶¶ 29, 32. Perrell liked "Sho' Nuff" and, at his suggestion, plaintiffs recorded "Sho' Nuff" in April 1973 at Studio 88 on 8th Avenue in Manhattan. *Id.* ¶¶ 34–35. Perrell later played that recording for representatives of James Brown's record label, People Records. *Id.* ¶¶ 36–39. Perrell and Brown then modified the "Sho' Nuff" recording by adding strings and bells. *Id.* ¶ 40.

*The recording*: As to the "Sho' Nuff" recording, around June 28, 1973, People Records commercially released a "single" record of it, which featured Sly, Slick & Wicked's song "Ready For You" on the record's B side (the "1973 Recording"). *Id.* ¶¶ 41, 48. The credits on the label for the 1973 Recording list Perrell and James Brown as producers of "Sho' Nuff," *id.* ¶ 43; Sly, Slick & Wicked—with plaintiffs' names listed—is also listed on the label, Jacobs Decl., Ex. 1. The label also states that the record distributor was Polydor Incorporated ("Polydor"), and includes, on its face, the words: "℗ 1973 Polydor Incorporated." *Id.*[2] Polydor was successor-in-interest to People Records and predecessor-in-interest to UMG. AC ¶¶ 23, 60. Around this time, plaintiffs, as Sly, Slick & Wicked, performed "Sho' Nuff" on the television show, "Soul Train." *Id.* ¶ 42.

On or about June 26, 1973, Polydor registered a copyright in the "Sho' Nuff" recording, having acquired ownership rights in People Records's ownership interest in the recording. *Id.* ¶¶ 60–61 & Ex. D. In the registration, Polydor claimed to be sole owner of the recording, which it termed a work made for hire. *Id.* ¶ 62. Plaintiffs allege, however, that the "Sho' Nuff"

---

[2] The symbol, ℗ (the letter P in a circle), is a component of a copyright notice for phonorecords of sound recordings, as provided by the Copyright Act. *See* 17 U.S.C. § 402(b) ("Form of Notice.—If a notice [of copyright] appears on the phonorecords, it shall consist of the following three elements: (1) the symbol ℗ (the letter P in a circle); and (2) the year of first publication of the sound recording; and (3) the name of the owner of copyright in the sound recording. . . .").

3

recording was not a work for hire for Polydor, because (1) it had been created before Sly, Slick & Wicked had met with representatives from People Records, and (2) no written agreement created a work for hire relationship between Sly, Slick & Wicked and People Records. *Id.* ¶¶ 65–66. Plaintiffs further claim that they are co-owners, with Perrell and UMG (as successor-in-interest to Polydor, which in turn was successor-in-interest to UMG), of the recording. *Id.* ¶¶ 69–72. But, plaintiffs allege, they have never received any remuneration from Perrell or UMG for the recording, or any accounting in connection with earnings from it; and that Perrell and UMG intentionally failed to give plaintiffs an accounting of the earnings from the recording. On December 21, 2001, UMG obtained a renewal registration for the renewal term rights in the recording. Jacobs Decl., Ex. 4.

*The composition*: As to the "Sho' Nuff" composition, on or around May 12, 1973, plaintiffs registered their claim to the copyright for that composition with the United States Copyright Office. *Id.* ¶ 45 & Ex. A. The copyright registration listed Wilson, Still, and Stubbs as authors of the composition. *Id.* In addition, on or about July 9, 1973, Perrell registered the composition with Broadcast Music Inc. ("BMI"), listing Perrell Music, Belinda Music, and Dynatone as publishers. *Id.* ¶ 50. Perrell Music, Belinda Music, and Dynatone were listed as receiving the entire publisher's share from the composition. Jacobs Decl., Ex. 2. The credits on the record label of the 1973 Release include "Dynatone Pub. Co./Perrell Music/Belinda Music (BMI)" as the publishers. *Id.*, Ex. 1.

On June 26, 1974, Chappell & Co., Inc., predecessor-in-interest to defendant Unichappell, *id.* ¶ 20, registered a copyright on the "Sho' Nuff" composition, listing plaintiffs as

the authors and Dynatone Publishing Company as the sole claimant. *Id.* ¶ 49 & Ex. B.[3] Plaintiffs allege, however, that they never executed a written agreement with People Records, Dynatone, or Belinda Music that transferred any interest in the renewal term of the copyright of the composition. *Id.* ¶ 51. And, they allege, Perrell and Dynatone "have been collecting the music publisher's share of performance income for 'Sho' Nuff' since 1973," and Perrell never provided them with any accountings of royalties. *Id.* ¶¶ 52–53. Plaintiffs also allege that, "after this dispute arose," Unichappell gave plaintiffs an accounting of royalties for the period of 1992–2013. *Id.* ¶ 56. Finally, on November 19, 2015, several weeks before initiating this action, plaintiffs filed, "as evidence of their sole ownership of the renewal copyright," a copyright registration for the renewal term rights in the "Sho' Nuff" composition. *Id.* ¶ 58 & Ex. C.

### B. Perrell's Cross-Claim

Perrell is a musician, producer, songwriter, and performer in the record industry. Cross-Claim ¶ 117. He alleges that, in 1973, after producing, with James Brown, various recordings made by plaintiffs as "Sly, Slick & Wicked," plaintiffs entered into a written agreement with James Brown's People Records, which provided for plaintiffs to record exclusively for People Records, and which also assigned and transferred all copyright interests—including plaintiffs'—to People Records. *Id.* ¶ 119. Perrell was credited as a co-producer on the 1973 Recording of "Sho' Nuff" and Perrell's music publishing company was credited as a co-publisher of the "Sho' Nuff" composition. *Id.* ¶ 120. And, as a co-publisher of the "Sho' Nuff" composition, Perrell alleges, he registered the composition with BMI. *Id.* ¶ 121. Perrell alleges that UMG never gave him with an accounting or royalties from UMG in connection with the recording. *Id.* ¶ 126. He

---

[3] Plaintiffs claim, however, and ask the Court to declare, that the June 26, 1974 registration by Dynatone is invalid. *Id.* ¶ 78.

seeks an accounting of any royalties paid as a result of UMG's alleged sampling of the "Sho' Nuff" recording in Justin Timberlake's "Suit & Tie" and J. Cole's "Chaining Day." *Id.* ¶¶ 127–32.

    **C.**    **Procedural History**

On January 6, 2016, plaintiffs Wilson and Still filed a complaint. Dkt. 1. They sued defendants, plus Perrell, BMI, and Anheuser-Busch Companies, Inc. After various extensions of time for defendants to respond, on July 22, 2016, Perrell filed an answer and his Cross-Claim, Dkt. 40, and, on August 1, 2016, defendants Dynatone, UMG, and Unichappell filed a motion to dismiss under Rule 12(b)(6). Dkts. 42–44.

On August 22, 2017, plaintiffs Wilson, Still, and Terrance Stubbs filed the AC. Dkt. 52. The AC, like the initial complaint, named Perrell, Dynatone, Unichappell, UMG, and BMI as defendants, *id.*; on August 3, 2016, plaintiffs entered a stipulation of dismissal with prejudice of their claims against Anheuser-Busch, Dkt. 51. On September 12, 2016, the Court entered an order of discontinuance for plaintiffs' claims against BMI, Dkt. 66, having been notified, on September 9, 2016, by the parties that plaintiffs and BMI had reached a settlement in principle, Dkt. 65. On October 11, 2017, the Court signed a stipulation of voluntary dismissal, with prejudice, of plaintiffs' claims against BMI. Dkt. 76.

On September 14, 2016, defendants Dynatone, Unichappell, and UMG filed the instant motion to dismiss the AC and the Cross-Claim, Dkt. 68, and a memorandum of law in support, Dkt. 69, and the Jacobs Decl., Dkt. 70. On September 23, 2016, the Court entered an order of discontinuance for plaintiffs' claims against Perrell, Dkt. 72, having been notified, on September 22, 2016, by the parties that plaintiffs and Perrell had reached a settlement in principle, Dkt. 71. On October 6–7, 2016, Perrell and plaintiffs, respectively, each filed a memorandum of law in

opposition to defendants' motion. Dkts. 73 ("Perrell Opp.") and 74 ("Plaintiffs' Opp."). On October 17, 2017, defendants filed a reply. Dkt. 77.

## II.     Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[R]ather, the complaint's *factual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks, citation, and alteration omitted) (emphasis in *Arista Records*).

A statute of limitations defense may be cognizable on a Rule 12(b)(6) motion to dismiss. Like other affirmative defenses, a defendant must plead and prove the lapse of a statute of

limitations period.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1)).  But, as with other affirmative defense, a defendant may raise a statute of limitations defense in a pre-answer motion to dismiss under Rule 12(b)(6) if the allegations in the complaint are such that "the defense appears on the face of the complaint."  *Id.* (citation omitted).

### III. Discussion

Plaintiffs bring two claims for declaratory judgments for copyright ownership and two claims for accountings of profits.

The ownership claims are for the "Sho' Nuff" composition, brought against Dynatone and Unichappell, AC ¶¶ 76–79, and for the "Sho' Nuff" recording, against UMG, *id.* ¶¶ 84–88.  The accounting claims are, from Dynatone and Unichappell for all amounts collected from use of the composition, *id.* ¶¶ 80–83; and, from UMG, for all amounts collected from the use of the recording, *id.* ¶¶ 89–92, both for the three years preceding this lawsuit.  Perrell's Cross-Claim against UMG seeks an accounting and payment of all royalties.  Cross-Claim ¶¶ 130–132.

Defendants move to dismiss under Rule 12(b)(6) for failure to state a claim, on the grounds that plaintiffs' ownership claims are untimely and that the accounting claims are both untimely and defective for failure to allege that a fiduciary relationship between plaintiffs and defendants.

For the following reasons, the Court grants the motion to dismiss.

#### A. Plaintiffs' Copyright Ownership Claims

Civil lawsuits brought under the Copyright Act must be brought "within three years after the claim accrued."  17 U.S.C. § 507(b).  A copyright ownership claim "accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'"

*Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)); *see also Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (copyright ownership cause of action "accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised"). While "an alleged author is aware of his claim to ownership of the work from the moment of its creation, the author does not need to bring suit until there has been an express repudiation of that claim." *Gary Freidrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013) (quotations omitted). "[A]ny number of events can trigger the accrual of an ownership claim, including an express assertion of sole authorship or ownership." *Kwan*, 634 F.3d at 228 (quotation omitted); *see also Gary Freidrich Enters.,* 716 F.3d at 317 ("For example, a claim can accrue . . . when alleged co-owners learn they are entitled to royalties they are not receiving.").

"Failure to sue within the three-year period requires dismissal of a claim of copyright ownership and 'any rights or remedies' that would flow from such a claim." *Margo v. Weiss*, No. 96 Civ. 3482 (MBM), 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998) (quoting *Merchant*, 92 F.3d at 56). This time limitation "promotes the principles of repose integral to a properly functioning copyright market." *Merchant*, 92 F.3d at 56–57; *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 749 (1989) ("Congress' paramount goal" in the Copyright Act was of "enhancing predictability and certainty of copyright ownership").

These principles foreclose plaintiffs' copyright ownership claims.

First, as to the "Sho' Nuff" recording, for which plaintiffs assert a claim against UMG, plaintiffs' allegations and the cognizable materials demonstrate that plaintiffs knew or had reason to know that UMG or Polydor, its predecessor-in-interest, asserted copyright ownership over the "Sho' Nuff" recording starting in 1973. As defendants note, the label on the 1973 Release

9

indicates that Polydor holds a copyright over the "Sho' Nuff" recording, as the notice on that label, "℗ 1973 Polydor Incorporated," complies with the statutory requirements for providing notice of a copyright for a sound recording. *See* 17 U.S.C. § 402(b)–(c); Jacobs Decl., Ex. 1. And Polydor asserted sole copyright ownership rights over the "Sho' Nuff" recording when it, on June 28, 1973, registered a copyright in the "Sho' Nuff" recording. AC ¶¶ 60–62 & Ex. D. Plaintiffs also allege that they received no remuneration from UMG or Polydor for the "Sho' Nuff" recording. *Id.* ¶ 69. This state of affairs persisted past the start of the renewal term in 2001, 28 years after the first copyright in 1973. Indeed, UMG continued to assert its exclusive ownership over the "Sho' Nuff" recording by registering a renewal term copyright for it on December 21, 2001, *see* Jacobs Decl., Ex. 4.

Second, as to the "Sho' Nuff" composition, Unichappell and Dynatone asserted ownership of the composition starting in 1973, and at least by June 26, 1974, when they registered a copyright for that composition and listed Dynatone as the claimant. AC ¶ 49 & Ex. B. Further, the credits on the record label of the 1973 Release list Dynatone, Perrell Music, and Belinda Music (BMI) as publishers of the record. Jacobs Decl., Ex. 1. Perrell and Dynatone collected the entire musical publisher's share of performance income from "Sho' Nuff" since in 1973; consistent with defendants' claim of ownership to the exclusion of plaintiffs, Perrell never provided plaintiffs with any accountings of royalties. AC ¶¶ 52–53. This state of affairs, too, was continuous, and continued past the commencement of the renewal term in 2001. Indeed, not until "[a]fter this dispute arose" did Unichappell make an accounting of royalties to plaintiffs for the period of 1992 to 2013. *Id.* ¶ 56. And not until November 19, 2015 did plaintiffs file a renewal registration to assert their ownership of the renewal term copyright of the "Sho' Nuff" composition. *Id.* ¶ 58 & Ex. C.

10

In light of these facts, plaintiffs' copyright ownership claims for the "Sho' Nuff" recording and composition accrued in 1973 or 1974, and, as to the renewal term, accrued in 2001. In a variety ways, catalogued above, defendants asserted copyright ownership over the recording and the composition starting in 1973 and/or 1974. Their conduct put plaintiffs amply on notice decades ago of their claims to own those copyrights. And defendants' conduct in the ensuing decades continued to put plaintiffs on notice, including into the renewal term of the recording and composition that began in 2001.

Plaintiffs therefore have long been on notice that defendants have claimed copyright ownership in the recording and composition and that defendants rejected any claim of interest by plaintiffs. Whether by defendants' "express assertion of sole authorship or ownership," *Kwan*, 634 F.3d at 228 (quotation omitted), or by their not paying royalties to plaintiffs, plaintiffs were placed "on inquiry as to the existence of a right," *Stone*, 970 F.2d at 1048; *see Gary Freidrich Enters.*, 716 F.3d at 317 ("a claim can accrue . . . when alleged co-owners learn they are entitled to royalties they are not receiving"). Plaintiffs' causes of action for copyright ownership thus accrued by 1974 and, for the renewal term, in 2001. Because civil actions under the Copyright Act must be brought "'within three years after the claim has accrued,'" *Kwan*, 634 F.3d at 228 (quoting 17 U.S.C. § 507(b)), plaintiffs' 2016 lawsuit is quite untimely.

Plaintiffs' attempt to salvage their claim is unpersuasive. They claim now to base their copyright claims solely on their renewal rights, which they argue vested in them by operation of law insofar as the Copyright Act vests such rights in the copyright owner for the duration of the renewal term. They further argue that their right to sue continued to refresh itself during the renewal term, so that any time bar would cover only infringements more than three years prior to the date of suit. That theory is incorrect as a matter of law. The Copyright Act clearly provides

that a civil lawsuit must be brought "within three years after the claim accrued," 17 U.S.C. § 507(b), and as the Second Circuit explained in *Kwan*, "[a]n ownership claim accrues only once," *Kwan*, 634 F.3d at 228. Plaintiffs here fell years short of bringing this suit within three years of the accrual of the renewal rights. Nor may a plaintiff "revive the time-barred claim of ownership of a copyright interest by relying on defendants' continued exploitation of the copyright within three years of [a plaintiff] filing suit." *Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016) (per curiam); *see also Tomas v. Gillespie*, 385 F. Supp. 2d 240, 246 (S.D.N.Y. 2005) (holding time-barred a plaintiff's seeking of "a declaration of ownership in renewal copyrights well after the three-year limitations period has expired").

The cases plaintiffs cite are not to the contrary. For example, plaintiffs cite *Stone* for the proposition that, when a plaintiff did not promptly seek relief for violations of its copyright ownership rights, it may still sue. Plaintiffs' Opp. at 8. But *Stone* rested on "highly idiosyncratic facts," such that its holding has been limited to "the narrow proposition that, in certain situations, the statute of limitations will not be applied to defeat the copyright co-ownership claim of an author's relative accruing more than three years before the lawsuit where uncertainty surrounded the relative's status as a member of the author's family." *Merchant*, 92 F.3d at 56. That proposition has no bearing here.

Similarly, plaintiffs cite *Stewart v. Abend*, 495 U.S. 207, 217 (1990), for the proposition that an author's claim to renewal term copyright rights is not subject to the Copyright Act's statute of limitations. Plaintiffs' Opp. at 1. *Stewart* held nothing of the sort. Its holding relates to the rights of an assignee of a copyright holder's renewal term rights in the circumstance where the copyright holder dies before the start of the renewal period. *Stewart* held, *inter alia*, that if the author dies before the renewal period, the assignee may continue to use the work only if the

12

author's successor then transfers the renewal rights to the assignee, because, as to the renewal rights, the assignee holds only an unfulfilled expectancy. *Stewart*, 495 U.S. at 220–21. That fact pattern and holding, too, are inapposite.

Finally, plaintiffs cite *Rose v. Bourne, Inc.*, 176 F. Supp. 605, 610 (S.D.N.Y. 1959), for the proposition that a filing of a copyright registration for a renewal term renews a previously registered copyright right but does not determine the actual ownership of the renewal term copyright. Plaintiffs Opp. at 10. *Rose* indeed notes that "[i]t is true that the copyright was renewed by virtue of the registration of the application but the ownership of the copyright as renewed was not determined thereby." *Rose*, 176 F. Supp. at 610. But, contrary to plaintiffs' claim, *see* Plaintiffs' Opp at 10, this principle does not defeat UMG's ownership of the renewal term copyright in the "Sho' Nuff" recording by virtue of UMG's December 21, 2001 copyright renewal registration for it, Jacobs Decl., Ex. 4. It does not speak to the operation of the statute of limitations. The relevant—and scarcely disputed—point is that plaintiffs' claims for copyright ownership accrued by 1974 or, as to the renewal rights, in 2001 when plaintiffs were put on inquiry as to the existence of their ownership rights. A lawsuit for those ownership rights filed in 2016 is, therefore, untimely.

Accordingly, the Court grants defendants' motion to dismiss plaintiffs' copyright ownership claims as barred by the Copyright Act's three-year statute of limitations.

### B. Plaintiffs' and Perrell's Accounting Claims

Plaintiffs bring claims for accounting of profits against UMG for the "Sho' Nuff" recording, AC ¶¶ 89–92, and against Dynatone and Unichappell for the "Sho' Nuff" composition, *id.* ¶¶ 80–83, and Perrell brings a cross-claim against UMG for the recording, Cross-Claim ¶¶ 130–32.

Under New York law, a claim for an accounting of profits, an equitable remedy, requires that the plaintiff establish that he or she is entitled to an accounting.  That, in turn, requires a showing—and in the context of a pleading, plausible allegations—of a fiduciary relationship between the plaintiff and defendant and of the defendant's breach of that fiduciary duty.  *See Palazzo v. Palazzo*, 121 A.D.2d 261, 264 (N.Y. App. Div. 1st Dept. 1986) ("The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest."); *see also Kosowsky v. Willard Mountain, Inc.*, 90 A.D.3d 1127, 1132 (N.Y. App. Div. 3d Dept. 2011) (a "cause of action seeking an accounting require[s] 'factual allegations or evidence of a fiduciary relationship' between plaintiffs and defendants" (quoting *Village of Hoosick Falls v. Allard*, 249 A.D.2d 876, 879 (N.Y. App. Div. 3d Dept. 1998) (internal modification omitted)); *MacCartney v. O'Dell*, No. 14 Civ. 3925 (NSR), 2016 WL 815279, at *5 (S.D.N.Y. Feb. 29, 2016) (same).

Defendants move to dismiss plaintiffs' and Perrell's accounting claims on two grounds: because the AC fails to allege the existence of a fiduciary relationship and because, like the copyright ownership claims, these claims are time-barred.  Defendants are correct on both scores.

As to Perrell, his Cross-Claim is devoid of factual allegations of a fiduciary relationship between him and UMG.  Indeed, in his opposition to the motion to dismiss, Perrell acknowledges that no fiduciary relationship existed or exists between him and UMG.  He states instead that the relationship between him and UMG is "of a contractual nature."  Perrell Opp. at 1.  But such a relationship will not do; as noted, a fiduciary relationship between the plaintiff and the defendant is a necessary element of an accounting of profits cause of action under New York law.

As to plaintiffs, they, too, fail to allege the existence of a fiduciary relationship between themselves and defendants. Instead, they argue that they have asserted a "prima facie claim for an accounting" because they claim to be, with UMG, co-owners of the "Sho' Nuff" recording, and to be owners of the "Sho' Nuff" composition. Plaintiffs' Opp. at 12–13. But there is no fiduciary relationship between a music publisher and a composer as a matter of law—and the fact that a party is responsible for collecting and passing on royalties does not create a fiduciary relationship. *Rios v. Cartagena*, No. 14 Civ. 7583 (GBD), 2015 WL 4470433, at *7 (S.D.N.Y. July 9, 2015) (collecting cases; citations omitted). Plaintiffs' accounting claims thus founder on the fiduciary duty element.

Separately, insofar as plaintiffs' accounting claims ostensibly flow from their alleged status as co-owners of the renewal term copyrights in the recording and composition, these claims are time-barred. "[P]laintiffs claiming to be co-authors are time barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights *and any remedies that would flow from such a declaration.*" *Merchant*, 92 F.3d at 56 (emphasis added); *see also Dodson v. JRL Music, Inc.*, --- F. App'x ---, No. 16-3087, 2017 WL 1103465, at *1 (2d Cir. Mar. 22, 2017) (summary order) (holding plaintiff's copyright ownership claims untimely, which, "[b]y extension," made plaintiff's state-law claim for accounting "also untimely" (citing *Merchant*, 92 F.3d at 56)). Because plaintiffs' state-law claims for accounting derive from their claim of copyright ownership, they, too, are time-barred.

The Court therefore grants defendants' motion to dismiss plaintiffs' and Perrell's claims for accounting of profits brought under New York law.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss the AC and Perrell's Cross-Claim. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 68, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: April 10, 2017
       New York, New York