UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN WILSON,
CHARLES STILL
and
TERRANCE STUBBS,

                     Plaintiffs,

          - against -

EDWARD "EDDIE" PERRELL d/b/a PERRELL
MUSIC, DYNATONE PUBLISHING COMPANY,
UNICHAPPELL MUSIC, INC., UMG
RECORDINGS, INC., and BROADCAST MUSIC
INC. (BMI)

                  Defendants.

Civil Action No.:  16 Civ. 00104 (PAE)

ECF Case

---

**MEMORANDUM OF LAW OF UMG RECORDINGS, INC., UNICHAPPELL MUSIC, INC. AND DYNATONE PUBLISHING COMPANY IN SUPPORT OF THEIR MOTION FOR FEES AND COSTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(d)(1) AND (2), SECTION 505 OF THE COPYRIGHT ACT, AND 28 U.S.C. § 1927**

MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY  10036
(212) 790-4500

*Attorneys for Defendants UMG Recordings, Inc.,
Unichappell Music, Inc. and Dynatone Publishing Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.    Plaintiffs Knew Their Copyright Ownership Claims Against Defendants
           Would Fail Because They Accrued In The 1970s ................................................. 2

    B.    Rosario Knew Plaintiffs Accounting Claim Against Defendants Would
           Fail Because Plaintiffs Lacked The Required Fiduciary Relationship With
           Defendants To Support Such A Claim .................................................................. 4

    C.    Plaintiffs' and Rosario's Objectively Unreasonable Litigation Conduct ............. 4

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ....................................................................................................................... 8

II.    DEFENDANTS ARE ENTITLED TO AN AWARD OF THEIR FEES AND
       COSTS THAT THEY INCURRED RELATED TO PLAINTIFFS' COPYRIGHT
       CLAIMS ...................................................................................................................... 8

    A.    Defendants Are Prevailing Parties ...................................................................... 8

    B.    An Award Of Fees Against Plaintiffs Is Proper Because Their Copyright
           Ownership Claims Were Based On Objectively Unreasonable And
           Frivolous Legal And Factual Positions ................................................................ 8

    C.    Awarding Attorneys' Fees And Costs Against Plaintiffs Related To Their
           Copyright Ownership Claims Will Deter Other Time-Barred Claims ............... 11

    D.    Requiring Rosario To Personally Satisfy An Award Of Fees Related To
           Plaintiffs' Copyright Ownership Claims Is Consistent With 28 U.S.C. §
           1927 .................................................................................................................... 12

III.   DEFENDANTS ARE ENTITLED TO AN AWARD OF FEES AND COSTS
       AGAINST ROSARIO THAT DEFENDANTS INCURRED IN RELATION TO
       PLAINTIFFS' ACCOUNTING CLAIMS .................................................................. 13

IV.   THE FEES AND COSTS SOUGHT BY DEFENDANTS ARE REASONABLE ......... 14

    A.    Defendants' Counsel's Hourly Rates Are Reasonable ....................................... 14

    B.    The Discounted Number Of Hours Counsel Expended Is Reasonable ............... 16

CONCLUSION .................................................................................................................. 16

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
   522 F.3d 182 (2d Cir. 2008)...............................................................................14

*Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*,
   Case No. 01 Civ 10135, 2003 WL 22434153 (S.D.N.Y. Oct. 24, 2003)................................11

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006)........................................................................11, 12, 14

*Beastie Boys v. Monster Energy Co.*,
   112 F. Supp. 3d 31 (S.D.N.Y. 2015)............................................................................ passim

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
   371 F.3d 883 (6th Cir. 2004) ........................................................................................9, 10

*Broadcast Music, Inc. v. Pamdh Enters., Inc.*,
   Case No. 13-CV-2255, 2014 WL 2781846 (S.D.N.Y. June 19, 2014....................................15

*Casa Duse, LLC v. Merkin*,
   791 F.3d 247 (2d Cir. 2015)..............................................................................7, 12, 14

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
   246 F.3d 142 (2d Cir. 2001)................................................................................................15

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994)........................................................................................................7, 9, 11

*In re 60 E. 80th St. Equities, Inc.*,
   218 F.3d 109 (2d Cir. 2000)..................................................................................................7

*Kirtsaeng v. John Wiley & Sons Inc.*,
   136 S. Ct. 1979 (2016)................................................................................................7, 8, 9, 11

*Mahan v. Roc Nation, LLC*,
   Case No. 14 Civ. 5075, 2015 WL 4388885 (S.D.N.Y. July 17, 2015).......................... passim

*Mallery v. NBC Universal, Inc.*,
   No. 07 Civ. 2250, 2008 WL 719218 (S.D.N.Y. Mar. 18, 2008) ............................................8

*Matthew Bender & Co. v. W. Publ'g Co.*,
   240 F.3d 116 (2d Cir. 2001)..................................................................................................7

*Mitek Holdings, Inc. v. Arce Eng'g Co.*,
   198 F.3d 840 (11th Cir. 1999) ............................................................................................8

*Palazzo v. Palazzo*,
   121 A.D.2d 261 (N.Y. App. Div. 1st Dept. 1986)...................................................................4

*Porto v. Guirgis*,
   659 F. Supp. 2d 597 (S.D.N.Y. 2009)..............................................................................10, 12

*Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt.*
   *Compliance, LLC*,
   Case No. 13-cv-2548, 2014 WL 1303434 (S.D.N.Y. Apr. 1, 2014) ......................................16

**TABLE OF AUTHORITIES**

(continued)

**Page**

**STATUTES**

17 U.S.C. § 507(b) ..............................................................................................................11

17 U.S.C. § 505 ........................................................................................................... passim

28 U.S.C. § 1927 ......................................................................................................... passim

**RULES**

Fed. R. Civ. P. 11 ...............................................................................................................12

Fed. R. Civ. P. 54 .................................................................................................................8

Fed. R. Civ. P. 54(d)(1).........................................................................................................6

Fed. R. Civ. P. 54(d)(2).........................................................................................................6

Fed. R. Civ. P. 54(d)(2)(B)(ii) ..............................................................................................6

Defendants UMG Recordings, Inc. ("UMG"), Unichappell Music, Inc. ("Unichappell") and Dynatone Publishing Company ("Dynatone") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for fees and costs against plaintiffs John Wilson, Charles Still and Terrance Stubbs (collectively, "Plaintiffs") and their attorney, Lita Rosario ("Rosario"), pursuant to Rule 54(d)(1) and (2) of the Federal Rules of Civil Procedure, Section 505 of the Copyright Act, 17 U.S.C. § 505, and 28 U.S.C. § 1927.

## PRELIMINARY STATEMENT

This case is a textbook example why Congress has authorized fee awards for actions brought under the Copyright Act, and allows for the imposition of sanctions pursuant to 28 U.S.C. § 1927.  Nearly one year before Rosario filed this lawsuit on Plaintiffs' behalf, she received a letter from Defendants' counsel comprehensively detailing why the purported copyright ownership claims at the heart of this lawsuit had long been time-barred.[1] Notwithstanding that Defendants' correspondence made it abundantly clear that the statute of limitations foreclosed those claims – and any derivative accounting claims – in their entirety, Plaintiffs, through Rosario, elected to pursue the claims anyway.  As this Court's Opinion and Order dated April 10, 2017 ("Opinion" or "Op.") granting Defendants' motion to dismiss details and confirms, even without any such correspondence, Plaintiffs and Rosario should have known that the claims had no chance of success.  *See* Op. at 11 (the allegations and materials referenced in Plaintiffs' First Amended Complaint confirm that "[P]laintiffs' copyright ownership claims for the 'Sho' Nuff' recording and composition accrued in 1973 or 1974, and, as to the renewal term, accrued in 2001", and, as such, that "*[their] 2016 lawsuit is quite untimely*") (emphasis added); *id*. at 15 ("Because [P]laintiffs' state-law claims for accounting derive from their claim

---

[1] A true and correct copy of this correspondence –a letter dated January 30, 2015 from undersigned counsel to Rosario – is annexed to the accompanying Declaration of Robert A. Jacobs executed on June 14, 2017 ("Jacobs Decl.").

of copyright ownership, they, too, are time-barred.")  The Court should award Defendants (i) the

fees and costs they incurred in relation to the copyright claims against Plaintiffs and Rosario

pursuant to 17 U.S.C. § 505 and 28 U.S.C. § 1927, respectively; and (ii) the fees and costs they

incurred in relation to the accounting claims against Rosario pursuant to 28 U.S.C. § 1927.

*First*, an award against Plaintiffs under Section 505 is consistent with the purposes of the

Copyright Act because their copyright claims were objectively unreasonable, and because all of

the other non-exclusive factors governing Section 505 awards strongly favor such relief here.

*Second*, the imposition of sanctions against Rosario under Section 1927 for both the copyright

claims and the accounting claims is warranted because she had no good faith basis for bringing

them.  *Third*, the discounted amounts sought by Defendants – $100,000 for fees and $26 for

costs – are reasonable.[2]

## FACTUAL BACKGROUND

### A.  Plaintiffs Knew Their Copyright Ownership Claims Against Defendants Would Fail Because They Accrued In The 1970s

As Plaintiffs have known for decades, Defendants and their predecessors have openly

claimed ownership and have exploited the copyrights to the 1973 sound recording and musical

composition entitled *Sho' Nuff* (a/k/a *Sho' Nuff* (*You Really Love Him*)) (respectively, the

"Recording" and "Composition") by Plaintiffs, the members of the musical group Sly Slick &

Wicked, for more than 40 years.  (First Amended Complaint ("FAC") ¶ 7; Op. at 2)  Yet it was

not until 2013, after several popular singles were released that sampled portions of the

Recording, that Plaintiffs attempted to challenge Defendants' or their predecessors' rights in the

Recording and Composition (collectively, the "Works").  (FAC ¶¶ 9-12)  Three years later, and

---

[2] The amounts specified are for the period of time spanning the lawsuit's inception until the issuance of the Opinion, and, therefore, do not include the fees and costs that Defendants will incur in relation to this motion.  Defendants intend to seek the latter fees and costs – which they reasonably estimate will total approximately $10,000 – if they prevail on this motion.

43 years after Plaintiffs first learned of Defendants' or their predecessors' assertion of copyright ownership in and to the Works, Plaintiffs filed suit seeking (i) judicial declarations invalidating Defendants' copyright registrations for the Works, and recognizing Plaintiffs as the Recording's joint owners and the Composition's sole owners; and (ii) accountings for Defendants' exploitations of the Works.  (*Id.* ¶¶ 76-92)

However, as set forth in Defendants' motion to dismiss the FAC (Dkt. 69), Plaintiffs were fully aware that Defendants and/or their predecessors claimed exclusive ownership of the original and renewal term copyrights in the Works, and that their claims were remarkably untimely at the time of filing, based on the following facts:

- The 1973 commercial release of the Recording expressly identified Polydor Incorporated ("Polydor"), UMG's predecessor-in-interest, as the distributor of and the owner of the copyright in the Recording, and listed Dynatone, Belinda Music ("Belinda") (Unichappell's predecessor-in-interest) and Perrell Music (Edward Perrell's publishing entity) as the publishers of the Composition;

- Polydor registered the copyright in the Recording in its own name as a work made for hire with the U.S. Copyright Office in 1973;

- Perrell registered the Composition with defendant Broadcast Music Incorporated ("BMI") in 1973, claiming that Perrell Music, Dynatone and Belinda were the publishers of the Composition, and entitled to the entire publisher share of public performance rights in and income from the work;

- Dynatone obtained a copyright registration in the Composition in its own name from, and filed a notice of use of the Composition in phonorecords as the owner of the copyright in the work with, the U.S. Copyright Office in 1974;

- Defendants and their predecessors allegedly failed to render any accountings or make any payments to Plaintiffs for exploitations of the Works following the 1973 commercial release of the Works; and

- UMG registered the renewal copyright in the Recording in its own name with the U.S. Copyright Office in 2001.

(*See* Dkt. 69 at 3-7; Op. at 9-13)

Notwithstanding Plaintiffs' "unpersuasive" attempts to counter the facts set forth above

(Op. at 11), the undeniable reality is that Defendants and their predecessors *repeatedly* repudiated Plaintiffs' purported ownership claims in the Works *for almost half a century*. Plaintiffs and Rosario received a detailed explanation about this nearly one year before they filed this lawsuit.

### B.   Rosario Knew Plaintiffs Accounting Claim Against Defendants Would Fail Because Plaintiffs Lacked The Required Fiduciary Relationship With Defendants To Support Such A Claim

In addition to the manifest failings of Plaintiffs' copyright ownership claims, Plaintiffs also asserted accounting claims against Defendants in relation to Defendants' exploitations of the Works.  (FAC, ¶¶ 80-83, 89-92)  However, Plaintiffs did not have – as they must to bring an accounting claim – a fiduciary relationship with any of the Defendants.[3]  Instead, they relied solely on the unsupportable argument that copyright co-owners owe each other a fiduciary duty. (Dkt. 74 at 12-13)  But Rosario, a seasoned attorney, was surely well aware of the fact that such an argument was not only baseless, but unreasonable in light of controlling New York law.

### C.   Plaintiffs' and Rosario's Objectively Unreasonable Litigation Conduct

On June 4, 2014, Rosario sent counsel for Defendants a letter alleging that Plaintiffs purportedly owned rights in the Works, and demanding that Plaintiffs be recognized and compensated as owners of the Composition.  (Jacobs Decl., Ex. 1)  After months of informal communication, Defendants' counsel formally responded to Rosario in writing on January 30, 2015 ("January 2015 Letter"), providing a detailed explanation, supported by case law and evidence, as to why Plaintiffs' claims were based on insufficient facts and barred under federal and state law.  (*Id.*)  In particular, Defendants highlighted that Plaintiffs' purported claims were barred as a matter of law because, among other reasons, the statute of limitations on any legal

---

[3] *See Palazzo v. Palazzo*, 121 A.D.2d 261, 264 (N.Y. App. Div. 1st Dept. 1986) ("The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest.").

challenge to Defendants' ownership rights in the Composition had long since expired.  (*Id.*)

Nevertheless, Rosario, on behalf of Plaintiffs, filed the Complaint in this action nearly a year later on January 6, 2016, seeking a declaration of copyright ownership and accountings in relation to the Works.  (Dkt. 1 ¶¶ 82-98)  Defendants thereafter moved to dismiss the Complaint on substantially the same grounds as set forth in their January 2015 Letter, noting additionally that Plaintiffs' accounting claim was improper as a matter of law because Plaintiffs lacked any fiduciary relationship with Defendants.  (*See generally* Dkt. 43)  Despite the fact that Plaintiffs not only had the benefit of the facts and law set forth in the January 2015 Letter and Defendants' motion to dismiss, they elected to amend their complaint and file the FAC on August 22, 2017 with the same copyright and accounting claims targeted in the motion to dismiss.  (Dkt. 51) Defendants subsequently moved to dismiss Plaintiffs' copyright and accounting claims in the FAC on statute of limitations grounds, and moved to dismiss Plaintiffs' accounting claims on the additional ground that they did not plead and were unable to demonstrate a fiduciary relationship with Defendants.  (Dkt. 69)  In their opposition, Plaintiffs made baseless statute of limitations arguments, including a contention – squarely at odds with binding Second Circuit precedent – that their copyright ownership claims could accrue multiple times.  (Dkt. 74 at 1, 5-9)  Plaintiffs also improperly relied on cases that plainly did not stand for the proposition for which Plaintiffs cited them – *i.e.*, that copyright co-owners supposedly owe each other a fiduciary duty – in an attempt to support their purported accounting claims.  (*See id.* at 12-13)

On April 10, 2017, this Court granted Defendants' motion to dismiss Plaintiffs' lawsuit. (Op. at 16)  The Court credited Defendants' copyright statute of limitations arguments in their entirety, noting that "[i]n a variety ways, . . . [D]efendants asserted copyright ownership over the [Works] starting in 1973 and/or 1974", and that such conduct put Plaintiffs "***amply on notice***

*decades ago* of their claims to own those copyrights." (*Id.* at 11 (emphasis added))  Noting that Plaintiffs' arguments that their copyright claims could accrue more than once were "incorrect as a matter of law," the Court further underscored that "[P]laintiffs' 2016 lawsuit is *quite untimely*" because "***Plaintiffs* . . . *have long been on notice*** that [D]efendants have claimed copyright ownership in the [R]ecording and [C]omposition and that [D]efendants rejected any claim of interest by [P]laintiffs." (*Id.* (emphasis added))  Finally, the Court emphasized that Plaintiffs "scarcely disputed" that their ownership claims had accrued over four decades prior to the filing of suit, or as to the renewal rights, well over a decade prior to filing suit. (*Id.* at 13)

Similarly, in the Opinion, the Court rejected Plaintiffs' accounting claims outright, noting that Plaintiffs "fail[ed] to allege the existence of a fiduciary relationship between themselves and [D]efendants." (*Id.* at 15)  The Court specifically held that "there is no fiduciary relationship between a music publisher and a composer as a matter of law", and "Plaintiffs' accounting claims thus flounder on the fiduciary duty element" of their accounting claim. (*Id.* (emphasis added))  The Court additionally found that even if Plaintiffs' accounting claims flowed from their status as co-owners or sole owners of the Works (and they did not) their accounting claims were nevertheless untimely. (*Id.*)  Thus, the Court resoundingly dismissed Plaintiffs' FAC.

## LEGAL STANDARD

A prevailing party has the right to seek recovery of its costs and attorney's fees pursuant to Rules 54(d)(1) and (2) of the Federal Rules of Civil Procedure (the "Federal Rules").  Fed. R. Civ. P. 54(d)(1) and (2).  In order to obtain such relief, the prevailing party must specify, among other things, "the statute, rule, or other grounds entitling [it] to the award".  Fed. R. Civ. P. 54(d)(2)(B)(ii).  Section 505 of the Copyright Act, 17 U.S.C. § 505, and 28 U.S.C. § 1927 provide such authority here.

6

The Copyright Act authorizes courts, in their discretion, to award "full costs by or against any party . . . [and to] award a reasonable attorney's fee to the prevailing party" in copyright actions.  17 U.S.C. § 505; *Kirtsaeng v. John Wiley & Sons Inc.*, 136 S. Ct. 1979, 1984 (2016); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 39 (S.D.N.Y. 2015); *Mahan v. Roc Nation, LLC*, Case No. 14 Civ. 5075, 2015 WL 4388885, at *1 (S.D.N.Y. July 17, 2015); *accord Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) ("Prevailing plaintiffs and prevailing defendants [under Section 505] are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion").  Although courts are not permitted to award fees under Section 505 as a matter of right, courts should award fees "where doing so is 'faithful to the purposes of the Copyright Act.'"  *Beastie Boys*, 112 F. Supp. 3d at 40 (quoting *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001)).

Courts may also "require an attorney to 'satisfy personally' costs and fees" under 28 U.S.C. § 1927.  *Casa Duse, LLC v. Merkin*, 791 F.3d 247, 264 (2d Cir. 2015) (citing 28 U.S.C. § 1927)).  Pursuant to 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose".  *Case Duse*, 791 F.3d at 264 (quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000)).

7

## ARGUMENT

**II.      DEFENDANTS ARE ENTITLED TO AN AWARD OF THEIR FEES AND COSTS THAT THEY INCURRED RELATED TO PLAINTIFFS' COPYRIGHT CLAIMS**

### A.      Defendants Are Prevailing Parties

As set forth above, both Rule 54 of the Federal Rules and Section 505 of the Copyright Act provide that courts may exercise their discretion to award fees and costs to prevailing parties in copyright actions.  Fed. R. Civ. P. 54; 17 U.S.C. § 505.  Where a court dismisses all of the plaintiff's claims, the moving party is clearly the prevailing party.  *Mahan*, 2015 WL 4388885, at *1 (defendants were prevailing parties in copyright ownership action because court granted defendants' motion to dismiss in its entirety); *accord Mallery v. NBC Universal, Inc.*, No. 07 Civ. 2250, 2008 WL 719218, at *1-2 (S.D.N.Y. Mar. 18, 2008) (defendant was prevailing party in copyright action after prevailing on summary judgment motion).  Courts are not permitted to "treat prevailing plaintiffs and prevailing defendants any differently".  *Kirtsaeng*, 136 S. Ct. at 1985.  Here, there can be no question that Defendants are the prevailing parties, as the Court granted their motion to dismiss in its entirety, and dismissed *all* of Plaintiffs' claims against them.  (Op. at 16)

### B.      An Award Of Fees Against Plaintiffs Is Proper Because Their Copyright Ownership Claims Were Based On Objectively Unreasonable And Frivolous Legal And Factual Positions

The "touchstone" of Section 505 "'is whether imposition of attorney's fees will further the interests of the Copyright Act' – specifically, 'encouraging the raising of objectively reasonable claims and defenses, . . . not only to deter infringement but also to . . . to maximize the public exposure to valuable works.'"  *Mahan*, 2015 WL 4388885, at *2 (quoting *Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999)).  In determining whether an award of fees to a prevailing copyright plaintiff would "align with the purposes of the

Copyright Act", *id.*, there is "no precise rule or formula" for courts to follow.  *Beastie Boys*, 112

F. Supp. 3d at 40.  However, courts are guided by a "non-exhaustive list of factors including

'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal

components of the case) and the need in particular circumstances to advance considerations of

compensation and deterrence.'"  *Mahan*, 2015 WL 4388885, at *1 (quoting *Fogerty*, 510 U.S. at

534 n.19); *see also Kirtsaeng*, 136 S. Ct. at 1985 (same).  "Although objective reasonableness

carries significant weight, courts must view all the circumstances of a case on their own terms, in

light of the Copyright Act's essential goals."  *Kirtsaeng*, 136 S. Ct. at 1989.  A fee award is

warranted here because Plaintiffs' copyright claims are objectively unreasonable and frivolous,

and because such relief would further the goals of the Copyright Act.

Claims are "objectively unreasonable" if they are "lacking in basis or have an objective

lack of merit."  *Mahan*, 2015 WL 4388885, at *1 (internal quotations omitted).  Copyright

claims like Plaintiffs' here that are "***brought after the statute of limitations has run may be***

***considered objectively unreasonable***."  *Id.* at *2 (emphasis added); *see also Bridgeport Music,*

*Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 895 (6th Cir. 2004) (affirming fee award to prevailing

defendant under Section 505 because "it was objectively unreasonable for plaintiffs to have

argued that the claims against [defendant] were not time barred").

Here, Defendants are entitled to an award of their fees and costs because Plaintiffs

knowingly filed baseless copyright ownership claims notwithstanding their knowledge that the

claims had been time-barred *for decades*.  (*See supra*, pages 2-6)  Indeed, as the Court

recognized, Plaintiffs "scarcely disputed" that their ownership claims had accrued over four

decades prior to the filing of suit.  (Op. at 13)  As Defendants demonstrated (and as Plaintiffs

failed to dispute), Defendants' and their predecessors' assertion of ownership in the Works was

systematic over the course of more than 40 years.  (*Id.* at 9-13)  Such "conduct put [P]laintiffs *amply on notice decades ago*" of their copyright ownership claim, and Defendants' "conduct in the ensuing decades *continued to put [P]laintiffs on notice*, including into the renewal term of the [Works] that began in 2001."  (*Id.* at 11 (emphasis added))  In short, "Plaintiffs therefore *have long been on notice*" of their claims, and their "2016 lawsuit is *quite untimely*."  (*Id.* (emphasis added))  Thus, whether Plaintiffs' conduct in filing an outdated lawsuit was objectively unreasonable is not a close call.  Plainly, as evidenced by the Court's total dismissal of Plaintiffs' copyright ownership claims based on the fact that the claims had accrued by 1974 or, as to the renewal rights, in 2001, and that the three-year statute of limitations governing such claims expired *many decades* before Plaintiffs filed the lawsuit, their conduct in pursing their claims was objectively unreasonable.[4]  *See Mahan*, 2015 WL 4388885, at *1-3; *see also Bridgeport Music, Inc.*, 371 F.3d at 895.

For the same reasons, there can be no legitimate argument that Plaintiffs' copyright ownership claims were anything but frivolous.  In fact, an award of fees is particularly appropriate here, where, Defendants expressly warned Plaintiffs *almost a full year* before Plaintiffs filed this lawsuit that their copyright ownership claims were time-barred as a matter of law.  *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) (awarding attorneys' fees were there were "indicia of bad faith", including that plaintiffs were "warned, before any action had been filed, that there was no colorable copyright infringement claim").

---

[4] Plaintiffs' positions in their Opposition only further highlight their objectively unreasonable positions, which forced Defendants to expend time and resources addressing arguments that were illegitimate and baseless as a matter of law.  In fact, in their opposition, Plaintiffs did not contest that they knew or should have known by the late 1970s and after the renewal term began in 2001 that Defendants and their predecessors had repudiated Plaintiffs' ownership in the Works.  (*See generally*, Dkt. 74)  Instead, Plaintiffs put forth a wholly untenable theory that their ownership claims could accrue more than once.  (*Id.* at 1, 5-9)  But as the Opinion recognizes, "[t]hat theory is incorrect as a matter of law" because ownership claims accrue *only once*.  (Op. at 11-12)

**C.**     **Awarding Attorneys' Fees And Costs Against Plaintiffs Related To Their Copyright Ownership Claims Will Deter Other Time-Barred Claims**

As set forth above, an award of fees must comport with the purposes of the Copyright Act. *Beastie Boys*, 112 F. Supp. 3d at 40.  To that end, while a primary objective of the Copyright Act is to encourage freedom of expression, the Copyright Act similarly discourages unreasonable and time-barred claims. *See generally*, 17 U.S.C. § 507(b); *Fogerty*, 510 U.S. at 527 ("a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.").  It is unsurprising, then, that Section 505 puts prevailing defendants and prevailing plaintiffs on equal footing. *Kirtsaeng*, 136 S. Ct. at 1986.  Particularly where a losing plaintiff pursues a patently unreasonable and plainly time-barred claim, failing to award fees against such a plaintiff may "invite others to bring similarly unreasonable actions without fear of any consequences." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006); *Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, Case No. 01 Civ 10135, 2003 WL 22434153, at *3 (S.D.N.Y. Oct. 24, 2003) (awarding fees against plaintiff for bringing unreasonable action not only deters parties from filing unreasonable actions, but also compensates prevailing defendants for being "forced to defend against such a baseless action").

As set forth above, Plaintiffs elected to pursue their copyright ownership claims notwithstanding the fact that (i) they had been aware of Defendants' and their predecessors' repudiation of Plaintiffs' alleged ownership rights for more than four decades; (ii) Defendants' counsel alerted Plaintiffs to the facts and law demonstrating that their claims were untimely nearly a year before they filed suit; (iii) Defendants moved to dismiss Plaintiffs' Complaint, again focusing Plaintiffs on the unreasonableness and untimeliness of their claims; and (iv) Plaintiffs nevertheless forged ahead with their FAC, forcing Defendants to file another motion to

dismiss on the same grounds.  In such circumstances, an award of fees is necessary "to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they will and that there will be no adverse consequences if they lose."  *Baker*, 431 F. Supp. 2d at 359.

**D.   Requiring Rosario To Personally Satisfy An Award Of Fees Related To Plaintiffs' Copyright Ownership Claims Is Consistent With 28 U.S.C. § 1927**

As demonstrated above, Plaintiffs, through Rosario, filed and continued to pursue their copyright ownership claims against Defendants notwithstanding their knowledge of the untimeliness of the claims.  Certainly by about a year before Rosario filed the lawsuit, when Defendants' counsel sent Rosario the January 2015 Letter, Rosario was as much on notice that Plaintiffs' copyright claims were untimely (by a matter of decades) as Plaintiffs were.  (*See supra*, pages 4-5)  But as set forth on pages 2 through 5 above, Rosario pursued the action anyway, electing not only to file time-barred claims, but also to amend the Complaint to *continue to pursue* time-barred claims, and further to set forth groundless arguments in opposition to Defendants' motion to dismiss the FAC.  Such conduct resulted in multiple rounds of avoidable briefing that warrant a finding that Rosario, too, should be personally responsible for Defendants' reasonable fees and costs related to Plaintiffs' copyright ownership claims.  *See* 28 U.S.C. § 1927; *see also Casa Duse*, 791 F.3d at 264.  Indeed, Rosario's conduct was tantamount to bad faith, given the multiple notices she received from Defendants regarding the untimeliness of Plaintiffs' claims (beyond what she easily could have ascertained had she performed the inquiries mandated by Rule 11 of the Federal Rules).  *See Porto*, 659 F. Supp. 2d at 617.

Accordingly, the Court should require Plaintiffs and Rosario to pay Defendants' reasonable attorneys' fees and costs that Defendants incurred in relation to Plaintiffs' objectively unreasonable and time-barred copyright ownership claims.

**III.    DEFENDANTS ARE ENTITLED TO AN AWARD OF FEES AND
COSTS AGAINST ROSARIO THAT DEFENDANTS INCURRED
IN RELATION TO PLAINTIFFS' ACCOUNTING CLAIMS**

Defendants are also entitled to an award of fees and costs against Rosario in relation to

Plaintiffs' accounting claims.  As demonstrated in Defendants' original and renewed motion to

dismiss, and as the Court confirmed in its Opinion, those claims failed as a matter of law because

Plaintiffs did not allege – and could not allege – a fiduciary relationship between Plaintiffs and

Defendants, and because the derivative accounting claims were untimely.  (Dkt. 69 at 16-17; Op.

at 13-15)

As Rosario, a practicing attorney, is well aware, a fiduciary relationship is a mandatory

element of an accounting claim in New York.  (*See* Op. at 14)  Nonetheless, Rosario pursued the

accounting claims not only to the detriment of her clients, but also to Defendants' detriment, who

had to incur fees and costs to demonstrate the impropriety of such claims in *two* motions to

dismiss.  (FAC ¶¶ 80-83, 89-92)  Even when faced with overwhelming case law demonstrating

why Plaintiffs' accounting claims failed as a matter of law in Defendants' motion to dismiss the

original Complaint and the FAC, Rosario *continued* to pursue them, putting forth unjustifiable

arguments in Plaintiffs' opposition.  In short, she argued, *without citation*, that the accounting

claims were "based upon a co-owner's duty to pay and account and an owners' right to receive

income from property owned."  (Dkt. 74 at 12)  But such an argument was based on the faulty

premise that "[t]here is a fiduciary duty between co-owners, and a right to an accounting from a

third party who is not an owner has who (sic) collected the owner's money."  (*Id.*)  As the Court

found, "there is no fiduciary relationship between a music publisher and a composer as a matter

of law", and Plaintiffs' accounting claims failed outright.  (Op. at 15)

Rosario, of course, knew this.  But in spite of this knowledge, her conduct forced

Defendants to litigate the accounting claims and incur additional fees and costs in what was

13

clearly avoidable motion to dismiss briefing.  As with Plaintiffs' time-barred copyright

ownership claims, this Court should levy a sanction against Rosario and require her to pay

Defendants' reasonable fees and costs incurred as a result of her pursuit of the accounting claims.

*See* 28 U.S.C. § 1927; *see also Casa Duse*, 791 F.3d at 264.

## IV.   THE FEES AND COSTS SOUGHT BY DEFENDANTS ARE REASONABLE

Courts assess the reasonableness of attorneys' fees using the "presumptively reasonable"

lodestar method.  *Mahan*, 2015 WL 4388885, at *3 (citing *Arbor Hill Concerned Citizens

Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189-90 (2d Cir. 2008)).  The lodestar

method determines reasonably fees by taking "the product of a reasonable hourly rate and the

reasonable number of hours required by the case."  *Beastie Boys*, 112 F. Supp. 3d at 48 (internal

quotations omitted).  Although the lodestar amount may be adjusted upward or downward

depending on the circumstances of the case, "[o]nce the lodestar amount is established, there is a

strong presumption that it is reasonable."  *Baker*, 431 F. Supp. 2d at 360.

Here, despite incurring more than $135,000 in fees to date, Defendants seek

reimbursement for only $100,000, plus the fees and costs they incur in relation to this motion.

As discussed above, the fees to date include a detailed review of a factual record spanning more

than four decades, significant back-and-forth about the case with Rosario, and briefing multiple

motions to dismiss.  Additionally, Defendants reasonably estimate their costs in this action to be

$26.00.  (Jacobs Decl. ¶¶ 3, 6-8)

### A.   Defendants' Counsel's Hourly Rates Are Reasonable

Rates are considered reasonable when they are comparable with the rates prevailing in

the district for similar services by attorneys of reasonably comparable skill, experience and

reputation.  *See Mahan*, 2015 WL 4388885, at *3; *see also Beastie Boys*, 112 F. Supp. 3d at 48

(listing factors a court may consider in determining what a reasonable client would pay for an

14

attorney's services).  Where parties have private counsel, the actual billing arrangement is also a

strong indication of what reasonable clients would pay for services.  *See Broadcast Music, Inc. v.*

*Pamdh Enters., Inc.*, Case No. 13-CV-2255, 2014 WL 2781846, at *6 (S.D.N.Y. June 19, 2014)

(citing *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001));

*see also Beastie Boys*, 112 F. Supp. 3d at 48.

Here, the qualifications for the primary members of Defendants' litigation team, as well

as their respective billing rates, are set forth in the accompanying Jacobs Declaration.  (Jacobs

Decl. ¶¶ 4-5)  As detailed therein, two attorneys accounted for a majority of work done on this

case:

- Robert A. Jacobs:  An experienced trial lawyer and Co-Chair of Manatt, Phelps & Phillips, LLP's Entertainment, Sports and Media Litigation practice, Mr. Jacobs is the supervising partner on this matter, and has had ultimate decision-making responsibility since its inception.  Mr. Jacobs's standard billing rate during the course of this litigation was $795 per hour.  Between January 2016 and April 2017, Mr. Jacobs worked a total of roughly 150 hours on this matter.  Nevertheless, Defendants seek only a discounted rate of $600 per hour for Mr. Jacobs's work, and a discounted number of hours at 130 hours for his work; and

- Jessamyn E. Vedro:  Ms. Vedro is a senior associate in Manatt, Phelps & Phillips, LLP's Litigation Division, with significant federal court experience.  Prior to joining the firm, Ms. Vedro clerked for the Honorable Jacqueline H. Nguyen of the Ninth Circuit Court of Appeals, as well as for Judge Nguyen while a District Judge in the Central District of California.  Ms. Vedro's standard billing rate during the course of this litigation was $580 per hour.  Between January 2016 and April 2017, Ms. Vedro worked a total of roughly 44 hours on this matter.  Nevertheless, Defendants seek only a discounted rate of $500 per hour for Ms. Vedro's work.

(Jacobs Decl. ¶¶ 4-5)  Despite Mr. Jacobs's and Ms. Vedro's standard billing rates, Defendants

seek an award of their fees at a *discounted* rate of $600 per hour for Mr. Jacobs's work, and $500

per hour for Ms. Vedro's work.  Both attorneys' rates, and particularly their discounted rates that

underpin the fee request made herein, are in line with (and often lower than), the rates charged

by comparable law firms in the Southern District of New York with similar expertise.  *See*

*Mahan*, 2015 WL 4388885, at *4 (citing *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, Case No. 13-cv-2548, 2014 WL 1303434, at *2 (S.D.N.Y. Apr. 1, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour.") (collecting cases)).  Accordingly, Defendants' counsel's discounted hourly rates are a reasonable guidepost for this Court to use in determining the amount of fees to award.

### B.   The Discounted Number Of Hours Counsel Expended Is Reasonable

The number of hours expended by counsel for Defendants in this matter is also reasonable.  As detailed above, between January 2016 and April 2017, Mr. Jacobs worked approximately 150 hours on this matter, and Ms. Vedro worked approximately 44 hours on this matter.  However, in an effort to judiciously and equitably account for the time spent on Plaintiffs' claims in this action, Defendants have analyzed counsel's billing records and have prorated the actual time spent on this matter to *exclude* time attributable to the time required to address Perell's accounting claims in the motion to dismiss briefing.  In light of that reduction, Defendants seek remuneration for only 130 of Mr. Jacobs's 150 worked hours.

In sum, Defendants seek reasonable fees of $100,000,[5] which have been discounted in both hourly rates and the number of hours actually worked by their counsel.

### CONCLUSION

For all of these reasons, Defendants respectfully request that the Court award Defendants (i) the fees and costs they incurred in relation to the copyright claims against Plaintiffs and

---

[5] The reduced $100,000 figure was calculated as follows:

| | | | |
|---|---|---|---|
| Mr. Jacobs: | 130 hours (discounted) x $600 hourly rate (discounted) | | |
| | | = | $ 78,000.00 |
| Ms. Vedro: | 44 hours x $500 hourly rate (discounted) | | |
| | | = | 22,000.00 |
| | | **TOTAL** | **$ 100,000.00** |

16

Rosario pursuant to 17 U.S.C. § 505 and 28 U.S.C. § 1927, respectively; and (ii) the fees and costs they incurred in relation to the accounting claims against Rosario pursuant to 28 U.S.C. § 1927.

Dated:   New York, New York                     Respectfully submitted,
         June 14, 2017

                                                MANATT, PHELPS & PHILLIPS, LLP


                                     By:   /s/  Robert A. Jacobs
                                           Robert A. Jacobs
                                           7 Times Square
                                           New York, NY 10036
                                           Telephone:  (212) 790-4500
                                           Facsimile: (212) 790-4545
                                           E-Mail:  rjacobs@manatt.com


                                           *Attorneys for Defendants UMG Recordings,
                                           Inc., Unichappell Music, Inc. and Dynatone
                                           Publishing Company*

17